## Goodloe v. City of Richmond et al.

(Decided Nov. 23, 1937.)

ROSS & ROSS, CARL EVERSOLE and W. C. EVERSOLE for appellant.

GEORGE C. ROBBINS, JOHN NOLAND and S. S. WILLIS for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming in part and reversing in part.

Because of severe restrictions placed upon the use of public water in Richmond by ordinances, George W. Goodloe laid a pipe line from a well across two streets and the property of W. L. Arnold to a public garage he owned and pumped water through it to supply the needs of his business.

On September 3, 1930, the City of Richmond and the Richmond Water & Light Company joined in a suit against Goodloe to enjoin him from making further excavations in the streets, laying a pipe line across them and using it for the transportation of water. A mandatory injunction to remove such part of the line as had already been laid was asked. It was alleged that the Water & Light Company had the exclusive right to construct and operate water lines in the city. On that day the circuit court clerk issued a restraining order against Goodloe conforming to the prayer of the petition. On November 15th the court ruled on the pleadings, which had in the meantime been completed. In passing on the defendant's motion to dissolve the restraining order and the plaintiff's motion for a temporary injunction,

the court recited that the laying of the pipe line in the streets, though illegal, had already been accomplished; that the Water & Light Company had failed to furnish the citizens with an adequate supply of water, and it did not appear that any steps were being taken by either it or the city to furnish other than a limited supply; that a critical emergency had existed in the city since some time in July, 1930, and under all the circumstances and conditions the defendant was entitled to use the pipe line to convey his own water to his place of business and use it in that connection. The court dissolved the restraining order and refused to require the defendant to remove the line or to cease using it to convey water for his own use, "so long as the existing emergency prevails." The right to vacate or modify the order upon a proper showing of changed conditions was expressly reserved. Goodloe then began using the line and supplying his garage through it. It appears the city, by resolution of November 22d, directed a dismissal of the suit so far as it was concerned. The plaintiff's motion before a judge of this court for such temporary injunction as was sought before the circuit judge was overruled, without consideration of the merits. On February 3, 1931, the suit was dismissed without prejudice.

Goodloe continued to use the pipe line until March 14, 1932, when the city severed it in the street. In the meantime, the water company had sold its plant to the city on December 31, 1931. Goodloe then sued the city and certain officers and employees and asked that they be required to reconnect the line, and that he have damages for injury to his property, for trespass, and for many other alleged wrongs. The original suit instituted by the city and water company was made a part of the record in this suit. A demurrer to the petition was sustained, and it was dismissed. That judgment was reversed. Goodloe v. City of Richmond, 250 Ky. 608, 63 S. W. (2d) 785. It was held by this court that under the allegations of the petition, with the presumption of the law relative to the rights of the owner of property abutting upon a street, Goodloe had shown a right to have his line across the streets so long as it did not interfere with the superior use by the city. Upon a return of the case issues were joined.

Thereafter, Goodloe instituted another suit against

the city and the Water & Light Company claiming additional damages both in kind and amount. This action was in part upon the bond for $1,000 which the defendants had executed to secure the restraining order in the original suit. Preliminary motions were passed upon and issue joined on those remaining in the pleadings.

In addition to injunctive relief and the setting aside of the sale of the water company's plant to the city, the aggregate of damages claimed by the plaintiff was $287,748.69 only. In general, the claims were as follows: For mental pain and anguish, humiliation and mortification, resulting from the wrongful conspiracy and act of the city and water company in cutting the pipe line, $5,000; for cost of repairing and damage to the line, $159.02; and for being deprived of its use, $250; for damages on the injunction bond, embracing items of lost profits and expense incurred in hauling water to his garage, and a fee to his attorney in defending that suit, amounting to $1,774.50; for the failure of the water company and the city to furnish an adequate water supply to the plaintiff's several buildings, particularly because of an ordinance which restricted the use of water during the severe drouth, $150,000; for water furnished the company for public consumption, $565.17; for breach of contract made with him whereby the water company agreed to take a supply of water for the public from the plaintiff's well, $75,000.

The two cases were consolidated, and the plaintiff's motion for a trial out of chancery of the issues of damages was sustained. At the conclusion of the evidence the defendants moved the court to withdraw four causes of action, presented in thirty-six paragraphs, of the second petition, because the allegations and evidence did not furnish any legal basis for recovery. With certain exceptions the court sustained the motion and struck them from the petition. He sustained the city's motion for a peremptory instruction as to all damages in the first suit.

The appellant admits that perhaps the situation did call for some minor surgery, but denies it warranted the guillotine. Cf. Branson v. Yeary, 266 Ky. 527, 99 S. W. (2d) 707. He argues he should have been required to elect and permitted to reform and simplify his pleadings. As to the need of reformation and simplification, we quarrel not. Both simplicity and brevity

are total strangers to the record. Whether the amputation of so many branches of the case was justified and whether an entire decapitation should have been performed, as the appellees maintain, we proceed to consider.

The court submitted to the jury only certain issues as to damages charged to have been sustained by reason of the injunction bond and of the failure of the water company to furnish the plaintiff a supply for his public garage during the period the restraining order was in effect. The verdict was for $1,000, and judgment was rendered accordingly. The failure to recover the balance of his claims, $286,748.69, has constrained the plaintiff to appeal to this court. The city and water company are aggrieved at the judgment of $1,000, and they, too, seek relief by way of reversal on their cross-appeal.

1. As above stated, the reversal of the judgment in the first case, which was that Goodloe had no right to lay a pipe line in the streets, was predicated altogether upon the allegations of the petition. The proof, however, showed conclusively that the fee-simple title to the streets involved was in the City of Richmond; that a part of the street invaded was not abutted by property owned by the plaintiff; and that his placing the line in the street was in violation of city ordinances. Thus, an entirely different state of case was presented. It follows, therefore, that the appellant's invasion of the streets was a trespass ab initio. The court's refusal to grant a mandatory injunction and compel the plaintiff to cease using the pipe line and to move it was purely a matter of grace. It was limited to the period of the emergency. The drouth of 1930 had, of course, long since been dissipated by March, 1932, when the city severed the pipe line in the street. All restrictions on the use of the public water had been removed at least a year before that date. Hence the plaintiff's several causes of action, resting upon this act, were properly dismissed.

2. Inasmuch as the items submitted to the jury and for which judgment was rendered against the city and the water company, jointly, on the injunction bond are of the same class, we may here dispose of the cross-appeal.

The instructions given the jury were in substance:

(1) If they believed that Goodloe was prohibited by the legal proceedings from supplying his garage with his own water for 73 days, and further believed that the water company would not or could not furnish him water during that period, and it was necessary for him to equip a motortruck with a tank and haul water to his garage, they should find for the plaintiff such sum as was the fair and reasonable value of the use of that machine, including the cost of operation, not exceeding $730; (2) if the jury believed it was necessary for the plaintiff to haul and store the water in a tank in his garage during the period in order to supply his business, and in connection therewith to install a pressure pump, and it was necessary for him to and he did purchase and install a tank and pump in the garage, they should find for the plaintiff the cost of installing the same and the reasonable value of their use, not to exceed $335. As stated, the verdict on these two items was for $1,000, or $25 less than was asked.

When it was developed and adjudged that Goodloe had no right to lay his pipe line across the streets, it also developed, as a consequence, that the restraining order had been properly issued and that the plaintiffs in that suit had been entitled to it. It is true that they dismissed the suit without prejudice after the circuit court entered an interlocutory order without proceeding to a final determination of the case. In effect they waived any further prosecution of the case during the period of the emergency. However, the defendant in that suit resurrected the case and raised the issue again in his suit against the city. Under the peculiar circumstances, we think, the result is the same as if it had been prosecuted to the same final judgment by the plaintiffs themselves.

But this right of recovery was also based upon the failure of the water company to comply with its contract with the city for the benefit of the citizens of Richmond to furnish an adequate supply of water at all times. In connection with this ground, we have the allegations of damage for the failure to furnish water to the plaintiff for his apartment house and two other business establishments on Main street. Coupled with the allegations of failure are charges that the city had been negligent in not requiring the company to increase its facilities to meet the increased population of the

city, and allegations that the company had negligently failed to do so. A conspiracy between the water company and the city to interfere with plaintiff's rights as a citizen and taxpayer, to avoid their contracts and their duty to furnish him water and defeat his contracts, and to "oppose, impoverish, interfere with and destroy," was charged.

The contract between the water company and the city existing during the period involved provided that the water company bound itself:

"To supply the city and its citizens with water as nearly good and pure as can be furnished with care and diligence upon the company's part, and in sufficient quantities for all domestic and commercial uses and fire protection; and to have such water ready for aforesaid uses at all times except in cases of unavoidable accident and such interruptions as may be reasonably necessary for purposes of making repairs or alterations to the company's works, provided that for all discontinuances or curtailments of water service for any period exceeding 48 hours, arising from any cause whatsoever, pro rata deduction from the water bills both of the city and its citizens shall be made."

No question is raised as to the duty of the water company to a citizen under the contract. Kentucky Utilities Co. v. Farmers' Co-Operative Stock Yards Co., 246 Ky. 40, 54 S. W. (2d) 364; Beutel v. Camp Taylor Development Company, 268 Ky. 544, 105 S. W. (2d) 632.

During the pendency of the extraordinary drouth of 1930, suit was brought by the city against the water company to compel it to furnish a greater supply of water and to increase its facilities. Considerable sums of money owing to the company were impounded by the court in order to protect the city. The company obtained 11,810,500 gallons of water from what are known as the Hanger Lakes, some distance from the city. When that supply was practically exhausted, it had 30 railroad tank cars of water brought from the Kentucky river daily for 12 days.

No effort was made to prove any loss or inconvenience by the plaintiff from the restrictions on the use of water except the ban on washing automobiles. It was

necessary, he testified, to have water for that purpose under a contract with his tenant and partner to furnish it. The cost of hauling water to his garage was the only recoverable loss he sustained. As to this, we do not think there was any liability on the injunction bond. It was upon the failure of the water company to comply with its contract and the ban imposed by the city on the use of the water. It further seems to us that the measure of damages submitted to the jury was erroneous. We think the proper measure of damage is the difference in the cost of conducting the water through the plaintiff's private pipe line and the cost of hauling it in the truck for the period involved. However, there was no proof as to the cost of pumping the water through the pipe line. The court, having no evidence upon which to base a proper instruction, should have directed a verdict for the defendants on this claim also. Hobson on Instructions, sec. 37.

3. There is another wholly distinct cause of action set up in the pleadings which the trial court held, was not established but which the appellant presses upon the appeal.

In the early part of January, 1931, the water company and the appellant entered into negotiations for the purchase of water from his well. A writing was drawn up designated as an "agreement and option," which provided, in substance, that the water company would make a test of the well, and if it found that the well would produce in excess of Goodloe's individual requirements, 10,000 gallons a day for 30 days continuously, then it would purchase the water at the rate of 15 cents per 1,000 gallons. Goodloe agreed to install a pump and provide power necessary for its operation, and in the event the water company exercised its option it would reimburse him those expenditures. It was expressly provided that should the well not produce the stated quantity, and in the event the water did not meet the approval of the State Board of Health, then in either event the water company should be under no further obligations under the contract. This instrument also provided that in consideration of the premises the water company should have the exclusive right and option for a period of three months to purchase from Goodloe all his surplus water at its fair and reasonable value. This document was never signed by the parties.

It is alleged in the petition that the terms were fully agreed upon by the plaintiff and the water company, and that Goodloe purchased certain equipment and incurred expenses of procuring and installing the same, and that the water company connected its lines therewith and took 140,192 gallons of water, worth $21. This, added to the net expenditures incurred, amounted to $565.17, for which recovery was prayed. The plaintiff's testimony tended to prove the allegations, but fell short of establishing the authority of the company's representatives, with whom he was dealing, to make such a contract. They testify there were only preliminary negotiations which were abandoned when their investigations proved Goodloe's well was not sufficient.

At most, there was evidence of an oral agreement according to the terms of this writing, and the validity of such a verbal contract is open to very serious question, for subterranean waters are regarded as are minerals, constituting part of the land (Nourse v. Andrews, 200 Ky. 467, 255 S. W. 84), and a contract in relation thereto to be within the statute of frauds. 18 R. C. L. 1095; Texas Co. v. Burkett, 117 Tex. 16, 296 S. W. 273, 54 A. L. R. 1397. Accepting the plaintiff's version, however, there was nothing more than an oral option given the company to purchase the water and to reimburse Goodloe the expenses which he would incur if he established the conditions with respect to the quantity of water and the approval of the State Board of Health, and the company availed itself of the water. Goodloe testified that the quantity proved to be sufficient, that is, 28,000 gallons a day for over a period of 16 days, when he ceased because the company advised it then had water in its reservoir. There is no evidence that the test was made for 30 days, nor any competent evidence that the quality of the water was approved by the State Board of Health. The company never availed itself of the option.

Concerning the claim for the value of water taken: As we understand, Goodloe used a small pump at his apartment house to put water into the mains through a three-fourths or seven-eighths inch pipe. This continued for 13 days. Then a two-inch pipe was used for three days. The meter measurement during this latter period was only 84,000 gallons. When the engineer of the company learned that this was being done, he

stopped it because there had been no approval by the State Board of Health of the water thus being put in the mains without filtration. We conclude from all the evidence that this test was only a voluntary effort on the part of Goodloe to convince the company it should purchase water from him, and the company declined to do so. Therefore, the court properly held the plaintiff was not entitled to go to the jury on these items.

The judgment is affirmed on the original and reversed on the cross-appeal.