**OZARK CHEMICAL CO. v. JONES,**
Collector of Internal Revenue.

No. 2336.

Circuit Court of Appeals, Tenth Circuit.

Dec. 24, 1941.

Rehearing Denied Feb. 12, 1942.

PHILLIPS, Circuit Judge, dissenting.

Fenelon Boesche, of Tulsa, Okl. (Roscoe E. Harper, Bradford J. Williams, and Richard P. Ryan, all of Tulsa, Okl., on the brief), for appellant.

Carlton Fox, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., J. Louis Monarch and Lester L. Gibson, Sp. Assts. to Atty. Gen., and Charles E. Dierker, U. S. Atty., and George H. McElroy, Asst. U. S. Atty., both of Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

**2**

HUXMAN, Circuit Judge.

The question presented for determination is whether appellant is entitled to take discovery value depletion under Sec. 114(b)(2) of the Revenue Act of 1934, 48 Stat. 680, 710, 26 U.S.C.A. Int.Rev.Code, § 114 (b) (2) on account of the discovery of a deposit of sodium sulphate in solution.

Appellant was engaged in the manufacture and sale of chemicals. In 1930 it investigated Soda Lake, near Monahans, Texas, to determine whether sodium sulphate existed there in paying quantities. It found sodium sulphate crystals in the bed of the lake, but not in commercial quantities. It continued its investigation by drilling a large number of wells, and discovered a subterranean lake of sodium sulphate in solution. The discovery was completed some time in 1931. Sodium sulphate in solution or brine form has no commercial value. Appellant constructed a processing plant to reduce the sodium sulphate to crystalline form. This plant was completed in 1933. Thereafter, appellant processed the solution and marketed the refined and finished product. In its 1935 income tax return it claimed a depletion deduction as the discoverer of a mine. This was disallowed, an additional tax was assessed and paid under protest, and suit was instituted to recover the same. Appellant has appealed from a decision adverse to its contention.

Appellant contends that it discovered a mine and that sodium sulphate in solution is a mineral deposit. Great emphasis is placed on the definition of a mine or mineral. Many authorities, including decisions by federal and state courts, Webster's International Dictionary, and general reference works, defining mines and minerals, are cited to sustain its contention that it did discover a mineral deposit in a mine.

We are not concerned here with a technical, scientific definition of a mine or mineral. Our problem is to determine what Congress meant by the use of these terms in the applicable revenue act. Did it have in mind the ordinary accepted and understood meaning of the words "mines" and "minerals" or a highly scientific one established through laboratory research and investigation?

We ordinarily do not think of a liquid as a mineral, nor pumping brine into receptacles and removing mineral substances therefrom by condensation or evaporation as mining. The ordinary, accepted meaning of a "mine" is an excavation in the earth from which metallic ores are removed by digging. Drilling a well and removing a liquid brine solution by pumping is far from the ordinary concept of a mine or a mining operation. In Marvel v. Merritt, 116 U.S. 11, 6 S.Ct. 207, 208, 29 L.Ed. 550, the court said: "The words used are not technical, either as having a special sense by commercial usage, nor as having a scientific meaning different from their popular meaning. They are the words of common speech, and, as such, their interpretation is within the judicial knowledge, and therefore, matter of law. Webster, in his Dictionary, defines the noun 'mineral' as 'any inorganic species having a definite chemical composition,' and 'ore' as 'the compound of a metal and some other substance, as oxygen, sulphur, or arsenic, called its "mineralizer," by which its properties are disguised or lost.' The word 'mineral' is evidently derived from 'mine', as being that which is usually obtained from a *mine,* and, accordingly, Webster defines the latter as 'a pit or excavation in the earth from which metallic ores or *other mineral substances* are taken by digging, distinguished from the pits from which stones only are taken and which are called quarries.' " In Atlas Milling Co. v. Jones, 10 Cir., 115 F.2d 61, 63, we said: "A 'mine' is an excavation in the earth from which ores, coal, or other mineral substances are removed by digging or other mining methods. In its broader sense it denotes the vein, lode, or deposit of minerals. Mining connotes the removal of minerals from a natural deposit." These definitions express the generally accepted and understood meaning of the words "mine" and "mineral."

When Congress used these terms in the 1934 Act, it was dealing with revenue and taxation. Taxation is eminently practical. Tyler v. United States, 281 U.S. 497, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758; Commissioner v. Affiliated Enterprises, Inc., 10 Cir., 123 F.2d 665, decided November 11, 1941. In Lutz v. Magone, 153 U.S. 105, 107, 14 S.Ct. 777, 778, 38 L.Ed. 651, the Supreme Court said: "It was held, however, to be unnecessary to enter upon this inquiry, 'because congress must be understood to use the word in its known commercial sense.' 'The object of the duty laws,' said Mr. Justice Story, 'is to raise revenue, and for this purpose to class substances according to the general usage and known denominations of trade. Whether a

particular article were designated by one name or another in the country of its origin, or whether it were a simple or mixed substance, was of no importance in the view of the legislature. It did not suppose our merchants to be naturalists or geologists or botanists. It applied its attention to the description of articles as they derived their appellations in our own markets, in our domestic as well as our foreign traffic.' "

It is our conclusion that in framing the 1934 Revenue Act, Congress used the terms "mines" and "minerals" in their usual and ordinarily accepted meaning. While the deposit found by appellant may be measurably akin to a mineral, it is not a mineral, and what appellant has is not a mine, as these terms were used by Congress in that portion of the Act providing for the allowance of discovery value deductions for depletion on account of the discovery of mines or minerals.

We think this construction finds support in the Act itself. Sec. 23 deals with deductions from gross income. Subsection (m), 26 U.S.C.A.Int.Rev.Code § 23(m), states that "in the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance * * *." The position of the phrase "other natural deposits" in the sentence indicates that Congress considered such deposits a classification separate and apart from mines and gas wells. By "natural deposits" Congress no doubt meant natural deposits other than mines or oil and gas wells.

Sec. 114 deals with depletion. Subsection (b) (2) deals with discovery value as the basis for depletion allowance. It grants discovery value depletion to only one of the classes of property enumerated in Sec. 23 (m), and even limits that classification to mines other than metal, coal or sulphur.

A taxpayer is not entitled as a matter of right to any deductions from his income in determining the amount of income taxes due the government. All such deductions are matters of legislative grace and the taxpayer must clearly bring himself within the act before he can claim them. New Colonial Ice Co. v. Helvering, 292 U. S. 435, 54 S.Ct. 788, 78 L.Ed. 1348; Deputy v. DuPont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416; Scripps v. Commissioner, 6 Cir., 96 F.2d 492; Commodore Mining Co. v. Commissioner, 10 Cir., 111 F.2d 131;

United States v. Donaldson Realty Co., 8 Cir., 106 F.2d 509.

It may be conceded, as petitioner contends, that sodium sulphate in solution is a natural deposit within the meaning of the Revenue Act. Natural deposits are mentioned, however, only in Sec. 23(m), which deals with depletion generally, and not in Sec. 114(b) (2), which deals with allowances for depletion based on discovery value. This section restricts such allowances to only a limited classification of mines and minerals. Had it been the intention of Congress to make discovery value the basis of depletion allowances in case of natural deposits other than minerals found in mines, it no doubt would have mentioned them in Sec. 114(b) (2), the same as in Sec. 23(m).

Affirmed.

PHILLIPS, Circuit Judge, dissenting:

In 1930, the Ozark Chemical Company[1] became aware of an increasing demand for sodium sulphate in the chemical, textile, glass, and sulphate industries. There was then a diminishing domestic supply, and the United States was largely dependent on German importations. Ozark made a search of the Western portion of the United States and Canada seeking to discover a natural deposit of sodium sulphate. It examined nearly every reported deposit in the United States and Canada. Simultaneously, it investigated market possibilities, freight rates, and available fuel for a recovery plant. In June, 1930, it sent a representative to Soda Lake, located about 12 miles south of the town of Monahans, Ward County, Texas, to examine reported sodium sulphate crystals in the bed of the lake. After an exhaustive effort, it was concluded that the crystals were so intermixed with the mud in the lake that sodium sulphate could not be recovered therefrom in commercial quantities. It was decided to drill below the lake bed in the hope of finding additional crystal beds. The first hole was drilled outside the lake bed and sodium sulphate in solution, or a brine containing about 5 per cent sodium sulphate, was found about 30 feet below the surface, and another brine, containing 12 to 15 per cent sodium sulphate, was found about 100 feet below the surface. Thereafter, 23 holes were drilled along the exterior boundary of an area of about two square miles, most of

[1] Hereinafter referred to as Ozark.

which disclosed these two brines. Between November, 1930, and June, 1931, Ozark acquired leases covering 2,722 acres, certain lands in fee, and certain mineral awards from the state of Texas at a cost of approximately $2,900.

In April, 1931, C. O. Anderson, a technical director for Ozark, made a preliminary report in which he estimated the sodium sulphate content in the upper brine at 1,100,000 tons and in the lower brine 1,840,-000 tons. This assumed a uniform sodium sulphate solution throughout the entire two square miles outlined by the original 23 holes.

. Ozark continued its exploration. It subjected certain of the original holes to pumping tests to determine how quickly the solution would become exhausted, and whether the sodium sulphate content would decrease. The holes were pumped at various intervals until the spring of 1933. In the meantime, about 177 additional holes were drilled inside the original 23 holes to corroborate the preliminary estimate of sodium sulphate tonnage. The additional holes drilled and the pumping tests indicated that the preliminary estimate was sound.

It was of advantage to discover the sodium sulphate in solution since the only known way to separate sodium sulphate from other salts found with it, is to first put it in solution and then freeze out the sodium sulphate. The freezing process was covered by Bulletin 646 published in 1926 by the Montana Department of Mines. The process had been known since 1767. Ozark investigated the cost of constructing a plant to recover the sodium sulphate and estimated that it would cost $250,000. It determined that the deposit was favorably located with respect to freight rates from source to market and low cost available fuel. It also determined the cost of producing and marketing the product.

While the explorations of the deposit were being carried on by drilling and pumping, Ozark made further studies to determine the best way of carrying out the process for recovering the sodium sulphate from the brines, and then went forward with the construction of the plant. The first unit of the plant was completed in 1932. It provided facilities for carrying the process to the crystallization stage. Additional means of dehydrating the crystals had to be provided. The entire plant was completed in May, 1933, and it went into production about June 1, 1933.

R. E. Davis, Inc., valuation engineers, prepared a discovery value depletion report for Ozark. In 1935, Ozark claimed a discovery value depletion deduction of $3,877.54 based on the sodium sulphate mined and sold that year. The deduction was disallowed. A deficiency was assessed and paid by Ozark. Claim for refund was filed and denied. Ozark brought this action against the Collector on the claim. From a judgment in favor of the Collector, Ozark has appealed.

The trial court found that Ozark had made a discovery, but that it had not discovered a mine or mineral deposit, and that the deposit had no discovery value at the time it was discovered.

Section 23 of the Revenue Act of 1934, 48 Stat. 689, 690, in part reads:

"(m) Depletion. In the case of mines, oil and gas wells, other natural deposits, * * * a reasonable allowance for depletion * * *, according to the peculiar conditions in each case; * * * to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary."

Section 114(b) (2) of the Revenue Act of 1934, 48 Stat. 710, in part reads:

"Discovery value in case of mines. In the case of mines (other than metal, coal, or sulphur mines) discovered by the taxpayer after February 28, 1913, the basis for depletion shall be the fair market value of the property at the date of discovery or within thirty days thereafter, if such mines were not acquired as the result of purchase of a proven tract or lease, and if the fair market value of the property is materially disproportionate to the cost. * * *"

The applicable Regulations are set out in Note 2.[2]

---

[2] Art. 23(m)-1(d) of Tr. Reg. 86 issued under the Revenue Act of 1934 in part provides:

"'Minerals' include * * * salt * * *"

Art. 23(m)-3 of such Regulations in part provides:

"With respect to any property for which discovery value is the taxpayer's basis for depletion, the depletion for any taxable year shall be computed by (1) adding to the discovery value of the mineral deposit in the property any subsequent allowable capital additions made by the taxpayer, (2) subtracting the ag-

The purpose of discovery depletion was to encourage the discovery of new deposits.[3] The wisdom of the provision allowing discovery depletion is demonstrated in the instant case. Here, Ozark discovered an essential mineral for which the United States was dependent on Germany, a source of supply entirely cut off since the commencement of the Second World War.

The purpose of the depletion allowance is to compensate the owner for exhaustion of the mineral reserves.[4] Therefore, the word "mines" was used in the phrase "in the case of mines, * * * other natural deposits, * * * a reasonable allowance for depletion" in the sense of the mineral deposit to be extracted and not the physical works or means to be employed for its extraction. The wasting of the latter is compensated for by depreciation, not depletion, although the two may be allowed with the approval of the Commissioner on the same basis.[5] The depletion, therefore, is based on the recoverable mineral deposit in the mine.

Webster's New International Dictionary, 2d Ed., p. 1563, defines a "mineral" as "any chemical element or compound occurring naturally as a product of inorganic processes."

The liquids, water and mercury, are regarded as minerals. Webster's New International Dictionary, 2d Ed., p. 1563. Subterranean waters are regarded as minerals.[6] Oil is a mineral.[7]

gregate of depletion deductions with respect to the property which would previously have been allowable to the taxpayer without the application of any net income limitation, (3) dividing the remainder by the number of units of mineral remaining as of the taxable year, and (4) multiplying the depletion unit, thus determined, by the number of units of mineral sold within the taxable year." (Italics mine.)

Art. 23(m)–7(b) of such Regulations in part reads:

"(b) To determine the fair market value of a mineral property by the present value method, the essential factors must be determined for each deposit included in the property. The factors essential in the case of all mineral deposits are (1) the total operating profit, (2) the rate at which this profit will be obtained, and (3) the rate of interest commensurate with the risk for the particular deposit. * * * In order to estimate the total operating profit for mines it is necessary to determine the quantity, quality, and recoverable mineral content of the developed, probable, and prospective ore reserves in all cases. * * * For mines with no prior operating record the future sales price and future production cost per unit of mineral must be estimated in order to determine the 'spread of profit' per unit of recoverable mineral."

Art. 23(m)–14 of such Regulations in part reads:

"(a) To entitle a taxpayer to a valuation of his property, for the purpose of depletion allowances, by reason of the discovery of a mine * * * or minerals, * * * it must appear that the mine or minerals were not acquired as the result of the purchase of a proven tract or lease; * * *

"(b) A mine or minerals * * * may be said to be discovered when (1) there is found a natural deposit of mineral, or (2) there is disclosed by drilling or exploration, conducted above or below ground, a mineral deposit not previously known to exist and the existence of which was so improbable that such deposit had not and could not have been included in any previous valuation for the purpose of depletion, and which in either case exists in quantity and grades sufficient to justify commercial exploitation.

"(c) * * * nor can a discovery, for purposes of depletion, be allowed as of a date subsequent to that when, in fact, discovery was evident, when delay by the taxpayer in making claim therefor has resulted or will result in excessive allowances for depletion." (Italics mine.)

[3] Congressional Record, December 17, 1918, p. 549;

Melville G. Thompson, 10 B.T.A. 25, 30;

Paul and Mertens Law of Federal Income Taxation, Vol. 2, § 21.54.

[4] Champlin v. Commissioner, 10 Cir., 78 F.2d 905, 909.

In United States v. Ludey, 274 U.S. 295, 302, 47 S.Ct. 608, 610, 71 L.Ed. 1054, the court said:

"The depletion charge permitted as a deduction from the gross income in determining the taxable income of mines for any year represents the reduction in the mineral contents of the reserves from which the product is taken. The reserves are recognized as wasting assets."

[5] See Paul and Mertens Law of Federal Income Taxation, Vol. 2, § 21.46;

Tr. Reg. 86, Art. 23(m)–3.

[6] Hathorn v. Natural Carbonic Gas Co., 194 N.Y. 326, 87 N.E. 504, 508, 23 L.R. A.,N.S., 436, 128 Am.St.Rep. 555, 16 Ann.Cas. 989;

Goodloe v. City of Richmond, 272 Ky. 100, 113 S.W.2d 834, 838.

[7] See cases cited in Note 11, post.

The term "sodium sulphate" embraces either of two colorless salts, $Na_2SO_4$, normal sodium sulphate, and $Na_2HSO_4$, sodium bisulphate. In crystal form it is known as the mineral mirabilite, $Na_2SO_410H_2O$. Mirabilite contains a small amount of water in the crystals, and is commonly known as Glauber's Salt. Webster's New International Dictionary, 2d Ed., p. 2389. Anhydrous sodium sulphate, the mineral thenardite, is $Na_2SO_4$. Webster's New International Dictionary, 2d Ed., p. 2619.

The Act of February 25, 1920, 41 Stat. 447, 30 U.S.C.A. § 261, recognizes sodium sulphate in solution as a mineral and provides for the issuance of prospecting permits therefor.[8]

I think there can be no doubt, therefore, that sodium sulphate is a mineral and that the deposit discovered at Soda Lake resulted from inorganic processes and was a mineral deposit. True, the mineral sodium sulphate there discovered was in solution with water, but most minerals in their natural deposit are carried by other minerals and can only be obtained by processes which extract them from the minerals in which they are carried. It seems to me, therefore, that the sulphate in the brine deposits below Soda Lake constituted mineral deposits.

Depletion is not restricted to mineral deposits recovered through mines in the strict sense of the word "mine," because Congress uses the phrase "mines, * * * other natural deposits." It is true that in § 114(b)(2), supra, providing for discovery depletion, Congress used the phrase "in the case of mines * * * discovered by the taxpayer." But, it undoubtedly used the word "mines," in the sense of mineral deposits. Such is the administrative construction. The applicable Regulations respecting discovery depletion in the case of mines repeatedly employ the phrases "mine or minerals" and "mineral deposit." See Note 2, ante. Congress has reenacted the discovery depletion provision without substantial change in the Revenue Acts of 1936 and 1938, and in the Internal Revenue Code of 1939, § 114, 26 U.S.C.A. Int.Rev.Code, § 114. This is persuasive evidence of legislative recognition and approval of the administrative construction.[9]

Furthermore, by common usage the word "mining" has ceased to be confined to the extraction by excavation from the earth of metals and solid minerals. It is now applied to the extraction from the earth of all substances which are classified geologically as minerals.[10]

It is true that the sodium sulphate is being recovered from the deposit by means of wells. The recovery is akin to the extraction of oil by means of an oil well. The Supreme Court of the United States and the courts of the oil and gas states have uniformly held that oil is a mineral and its extraction by means of wells is mining.[11]

[8] See American Sodium Co. v. Shelley, 51 Nev. 344, 276 P. 11.

[9] United States v. Dakota-Montana Oil Co., 288 U.S. 459, 466, 53 S.Ct. 435, 77 L.Ed. 893;
Old Mission Co. v. Helvering, 293 U.S. 289, 293, 294, 55 S.Ct. 158, 79 L.Ed. 367;
Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52;
Helvering v. Reynolds Co., 306 U.S. 110, 114, 115, 59 S.Ct. 423, 83 L.Ed. 536.

[10] See In re Great Western Petroleum Corporation, D.C.Cal., 16 F.Supp. 247, 249.
See, also, cases cited in Note 11, post.

[11] Burke v. Southern Pacific R. R. Co., 234 U.S. 669, 676, 34 S.Ct. 907, 58 L.Ed. 1527;
Ohio Oil Co. v. Indiana, 177 U.S. 190, 202, 20 S.Ct. 576, 44 L.Ed. 729;
Lovelace v. Southwestern Petroleum Company, 6 Cir., 267 F. 513, 514;
Isom v. Rex Crude Oil Co., 147 Cal. 659, 661, 82 P. 317, 318;
Kelley v. Ohio Oil Co., 57 Ohio St. 317, 49 N.E. 399, 401, 39 L.R.A. 765, 63 Am.St.Rep. 721;
People v. Bell, 237 Ill. 332, 337, 86 N.E. 593, 594, 19 L.R.A.,N.S., 746, 15 Ann. Cas. 511;
Lanyon Zinc Co. v. Freeman, 68 Kan. 691, 696, 75 P. 995, 997, 1 Ann.Cas. 403;
Murray v. Allard, 100 Tenn. 100, 43 S.W. 355, 39 L.R.A. 249, 66 Am.St.Rep. 740;
Beckett-Iseman Oil Co. v. Backer, 165 Ky. 818, 819, 178 S.W. 1084;
Sult v. Hochstetter Oil Co., 63 W.Va. 317, 325, 61 S.E. 307, 311;
Barker v. Campbell-Ratcliff Land Co., 64 Okl. 249, 167 P. 468, 469, L.R.A. 1918A, 487;
Rice Oil Co. v. Toole County, 86 Mont. 427, 284 P. 145, 146;
Osborn v. Arkansas Territorial Oil & Gas Co., 103 Ark. 175, 146 S.W. 122, 124.
In Rice Oil Co. v. Toole County, supra [86 Mont. 427, 284 P. 146], the court said:
"Oil is a mineral and the process of extracting it from the rocks is mining.

I see no reason why sodium sulphate brine should not be regarded likewise as a mineral and its extraction through wells as mining.

I, therefore, conclude that sodium sulphate and the water in which it is carried are both minerals and that their extraction by means of pumping is mining.

It may be that sufficient exploration and tests were completed in 1932 to demonstrate that the sodium sulphate existed in quantities and grades sufficient to justify commercial exploitation, and that the discovery occurred in 1932, rather than in 1933. However, whether the discovery was in 1932 or 1933 would not affect the discovery value and would not result in increasing the depletion allowance, and the exact date of discovery is, therefore, immaterial. See Art. 23 (m)–14, Tr.Reg. 86, Note 2, ante.

I cannot agree with the lower court's conclusion that the deposit had no discovery value when discovered. The fact that the sodium sulphate was in solution rather than in crystal form was an advantage, because placing the sodium sulphate in solution is the first step in the process of recovering the crystals when found in crystal form. It is an essential step in the process to remove the crystals from the impurities with which they are associated. The process of freezing out the crystals in pure form from the solution was well known at the time of the discovery. All of the essential factors for computing discovery depletion under Art. 23(m)–7(b), Tr.Reg. 86, were readily ascertainable in 1932 and 1933. It was, therefore, possible to ascertain the discovery value under the Regulations at the time the discovery was made.

It seems to me that under the existing emergency when the discovery of new mineral deposits is so essential, we should give the statute a broad construction, if its language and the applicable Regulations permit thereof. I think they do.

For the foregoing reasons, I think Ozark was entitled to the depletion allowance, and respectfully dissent.

---

Burke v. Southern Pacific R. R. Co., 234 U.S. 669, 34 S.Ct. 907, 58 L.Ed. 1527. Consequently, this court has said an oil well is a mine. Mid-Northern Oil Co. v. Walker, 65 Mont. 414, 211 P. 353."

In Burke v. Southern Pacific R. R. Co., supra, 234 U.S. page 677, 34 S.Ct. page 910, 58 L.Ed. 1527, the court said:

"An official report laid before Congress a few months before this grant was made showed that the daily output of the oil wells in Pennsylvania, Ohio, West Virginia, and Kentucky was 12,000 barrels. H. R. Ex. Doc. No. 51, 39th Cong., 1st Sess. In the same year the supreme court of Pennsylvania, in disposing of an oil land controversy, *not only treated the oil as a mineral, but spoke of the work of extracting it from the containing rocks as 'mining for oil;'* and, in concluding the opinion, said: *'Until our scientific knowledge on the subject is increased, this is the light in which the courts will be likely to regard this valuable production of the earth.'* Funk v. Haldeman, 53 Pa. 229, 7 Mor.Min.Rep. 203. And in another case that court said: *'It is a mineral substance obtained from the earth by a process of mining,* and lands from which it is obtained may with propriety be called mining lands.' Gill v. Weston, 110 Pa. 312, 317, 1 A. 921. Its mineral character has also been affirmed by the courts of other States. Williamson v. Jones, 39 W.Va. 231, 256, 19 S.E. 436, 25 L. R.A. 222; Kelley v. Ohio Oil Co., 57 Ohio St. 317, 328, 49 N.E. 399, 39 L.R. A. 765, 63 Am.St.Rep. 721; Murray v. Allard, 100 Tenn. 100, 43 S.W. 355, 39 L.R.A. 249, 66 Am.St.Rep. 740, 19 Mor. Min.Rep. 169; Wagner v. Mallory, 169 N.Y. 501, 505, 62 N.E. 584, 22 Mor.Min. Rep. 42. Congress at different times has spoken of it as a mineral (15 Stat. 58, 59, c. 41, § 1; Id. 125, 167, c. 186, § 109; 29 Stat. 526, c. 216, 30 U.S.C.A. § 101; 32 Stat. 691, 702, c. 1369, § 42; 36 Stat. 847, c. 421, 16 U.S.C.A. § 471, 43 U.S. C.A. §§ 141–143), and this court did so in Ohio Oil Co. v. Indiana, 177 U.S. 190, 202, 20 S.Ct. 576, 44 L.Ed. 729, 20 Mor. Min.Rep. 466." (Italics mine.)