FRANK J. FRITSCHE, APPELLANT, V. JOHN H. TURNER, TRUSTEE, ET AL., APPELLEES.

276 N. W. 403

FILED DECEMBER 15, 1937. No. 30099.

*Butler & James, Frank B. Morrison* and *Carl E. Peterson,* for appellant.

*Don Kelley* and *Courtright, Sidner, Lee & Gunderson, contra.*

Heard before GOSS, C. J., EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ., and KROGER, District Judge.

GOSS, C. J.

Plaintiff appeals because the district court refused to cancel an oil and gas lease in which he was lessor and refused to set aside a so-called "royalty deed" made by him.

Plaintiff is the owner of 2,600 acres of land in Frontier county. On September 15, 1932, John H. Turner and others were seeking to acquire a large block of leases of land in that neighborhood with the idea of prospecting for oil and gas. On the day named, plaintiff leased his land for five years, or so long as gas or oil was produced, to John H. Turner, Trustee, one of defendants. Plaintiff was to receive one-eighth of the gross proceeds of the gas or oil. If no well should be commenced on the land by September 15, 1934, the lease was to terminate unless the lessee paid $650 for the succeeding year. Likewise, the commencement of the drilling of a well could be postponed from year to year upon the payment each time of a like annual rental. Farmers Security Bank of Maywood was named as the depository where the rentals might be paid or tenders made to lessor's credit. It was also provided in the lease that, if lessee, his heirs, assigns or legal representatives should fail to pay the rentals within 30 days after they became due, an affidavit before a notary public filed in the recording office should operate as a cancelation of the lease.

On the same day, September 15, 1932, at the same time the Turner lease was executed, plaintiff executed another

instrument in which defendant Charles W. Kelley, Trustee, was the grantee, conveying an undivided one-half interest "to all of the oil, gas and other minerals in and under, and that may be produced from" the land (describing 2,280 acres more or less). This instrument refers to the land as being "now under an oil and gas lease executed in favor of John H. Turner, Trustee," and is expressly made subject to the terms of that lease, but provides that if, for any reason, the lease should be canceled, the grantee Kelley should be considered the owner of one-half of the lease interests and one-half of all oil, gas and other minerals under the land for a period of 20 years and as long thereafter as oil and gas or either of them is produced from said land.

The petition further alleged that John H. Turner, Trustee, and Charles W. Kelley, Trustee, solicited plaintiff to sign the instruments and that the instruments "were represented to be an oil lease," that they were executed by plaintiff without advice of counsel, that plaintiff was fraudulently induced to execute them, that there was no consideration for their execution, and that plaintiff never had any intention of selling or conveying any mineral rights in the land. The petition then alleged that Kelley, Trustee, conveyed part of his interest in the mineral rights to John P. McCoy and that McCoy conveyed to various parties from time to time certain fractions of his interests, and that these conveyances are recorded in the miscellaneous records of the county; that Turner, Trustee, conveyed all his rights under the lease to Tur-Mac Oil Corporation. So the various grantees, eleven in number, were made parties-defendant, in order, probably, to allow plaintiff to quiet his title, as he prayed. Plaintiff further alleged that there was fraud in procuring the instrument conveying the mineral rights in that defendants Turner and Kelley represented to him that it was "a part of the oil lease," that plaintiff never read said purported sale and did not know the contents thereof, but relied on their representations; and that there was no consideration for the execution thereof. The prayer

asked for a cancelation of the lease and of the sale of the mineral, oil and gas rights, and that title be quieted in plaintiff.

The answer admitted the execution of the lease and royalty deed and denied all other allegations of the petition. Defendants Turner and McCoy specifically denied that the royalty deed was represented to be an oil lease, alleged that plaintiff read and examined the deed before he signed, that he received the consideration named, that it was an adequate consideration and that there was an additional consideration in that Turner and McCoy were, as plaintiff knew, obtaining oil leases and royalty deeds for the purpose of raising funds to explore the region, and at the time he executed these instruments plaintiff requested Harry Hall (his banker) to hold the instruments in escrow until the block of leases was core drilled by Turner and McCoy and they were so held until these parties made a complete geological survey of the area and checked it by core drilling nine holes to a depth of over 1,200 feet, whereupon Harry Hall delivered to Turner and McCoy the lease and royalty deed.

The answer further alleged that defendant Big Indian Oil & Development Company, relying upon the validity of the lease and royalty agreement, agreed with Turner and McCoy to furnish them $5,000 and did in fact furnish them over $4,000 to conduct the geological survey, none of which they would have done without the security of the instruments; that, relying upon these agreements, defendant Big Indian Oil & Development Company was thereby induced by plaintiff to change its position, will suffer irreparable damage if plaintiff is permitted to prevail, and plaintiff is thereby estopped to deny the validity of the royalty deed.

The instruments were executed September 15, 1932. Plaintiff testified that they were brought out to his home and that defendant Turner, Harry Hall (who was the banker and notary public), defendant McCoy, and some one else, were there. He thinks McCoy did the talking.

Plaintiff testified that he cannot read, but can sign his name. The petition does not plead that he cannot read. He testified that no money was paid to him that day, but two dollars was paid to him afterwards and they told him the instruments would be kept in the bank "till they started an oil well." On cross-examination he testified that, when the papers were signed, there was no conversation about them except that McCoy said, "We have an oil lease," that he did not ask Hall or any one else to read them to him. There was no suggestion in plaintiff's testimony that Mr. Hall, his banker, took any part in securing the instruments save to take the acknowledgments.

John P. McCoy testified that he was a geologist and interested in getting a block of leases for gas and oil exploration, that he was present when Fritsche signed the instruments, that Hall took the instruments to the bank to hold until certain exploration work was done, that nine holes were core drilled and other geological work was done, that the expense of the exploratory work was $4,200 and that the royalty deed and gas lease were then delivered by Mr. Hall in accordance with the oral agreement made on September 15, 1932; that as consideration for said instruments Mr. Hall paid Mr. Fritsche two dollars and Mr. Fritsche receipted for it; that the exploratory work was an added consideration as it enhanced interest in the lands as oil and gas lands. Plaintiff admitted that he got the two dollars; August 18, 1934, he executed an instrument waiving the rentals from September 15, 1934, to September 15, 1935.

The evidence shows that only about $30 had been deposited with the Maywood Bank to apply on the rentals due September 15, 1935. The suit was commenced October 5, 1935. So the parties making the lease were liable and the lease was subject to cancelation. The district court ignored this, probably because the lease itself provided, as shown in our statement of the facts, for cancelation by another method; and the district court, in effect, decided only that the proofs were not sufficient to cancel

the royalty deed, as to which rights had vested in the appellees, and the evidence of which was not considered by the trial court as sufficient to sustain the burden undertaken by plaintiff and thus to divest appellees of those rights.

In his findings of fact in the decree the trial court, speaking of the royalty deed and passing on that alone, said:

"The plaintiff bases his action upon alleged fraud and misrepresentation and upon alleged failure of consideration. The charge of fraud and misrepresentation is very limited, being, 'that it was signed without advice of counsel' and that it was obtained 'from the plaintiff by fraud and misrepresentation in this, that defendants represented to the plaintiff that the same was a part of the oil lease set forth in paragraph two herein, that plaintiff never read said purported sale and did not know the contents thereof.' There is no charge that the plaintiff was unable to read or illiterate, or that anything was done to prevent his reading the contract or having it read or explained to him or to induce him not to do so. On the trial and in the argument, the issue was broadened out a little by the offer of testimony that plaintiff was unable to read.

"It appears that there were at least three other persons present at the time the contract was entered into by the plaintiff, one of whom was plaintiff's banker or the cashier of the bank with which he had done business for some time; another was one McCoy, whom plaintiff stated that he had never seen before; that he relied upon what McCoy said and appears to have made no further inquiry or investigation. There is a conflict in the testimony of the plaintiff and McCoy but, giving the testimony of the plaintiff the most favorable consideration, the evidence of fraudulent misrepresentation is very meager. Fraud is never presumed but must be proved, and the burden of proving it is upon the party alleging the fraud. The evidence is not sufficient to sustain the charge of failure of consideration. On the issues as made by the pleadings and the

evidence, the court finds generally in favor of the defendants and against the plaintiff."

In *McKinlay v. Feagins,* 82 Okla. 193, 198 Pac. 997, the syllabi say:

"An oil and gas lease contained the following provision: 'If no well be commenced on said land on or before the 26th day of June, 1919, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit, in the Farmers' State Bank at Newkirk, Oklahoma, or its successors, which shall continue as the depository, regardless of changes in the ownership of said land, the sum of forty dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well for six months from said date, and in like manner and upon like payments, or tenders, the commencement of a well may be further deferred for a like period of the same number of months successively.' *Held,* a failure on the part of the lessee to commence the drilling of a well or to pay the rental as stipulated automatically terminated the lease contract.

"An oil and gas lease containing the 'unless' clause confers an optional right upon the lessee, and should be strictly construed in favor of the lessor and against the lessee, and time is of the essence of the contract."

The foregoing case is typical of the almost unanimous holding in all the states where gas and oil are found. We are of the opinion that it would have been better had the trial court canceled the lease itself in so far as it did not interfere with vested rights of the appellees or of any of them; that is, of rights that have vested under the royalty deed as distinguished from the lease.

Plaintiff himself, owner of the land, made to Charles W. Kelley, Trustee, the royalty deed of one-half interest in the oil, gas and minerals that should be produced from his land. So Kelley and his assignees, or grantees, not being parties to the lease, would have vested rights in the oil, gas and minerals produced.

We are of the opinion that the district court properly appraised the evidence and stated the correct rule of law when it found for defendants as to the royalty deed. Fraud is never presumed but must be clearly proved by the party pleading and relying upon it. *Krelle v. Bowen*, 128 Neb. 418, 259 N. W. 48. The proof of fraud is, as the decree stated, very meager. It does not afford sufficient basis for a decree against defendants.

The judgment of the district court is affirmed as to the deed and is reversed as to the lease, and the district court is directed to enter a decree canceling the lease.

AFFIRMED IN PART AND REVERSED IN PART.