THE VALENTINE OIL COMPANY, A CORPORATION, ET AL., APPELLANTS, V. ROY R. POWERS ET AL., APPELLEES.

59 N. W. 2d 150

Filed June 5, 1953. No. 33259.

72

*Eugene D. O'Sullivan, Eugene D. O'Sullivan, Jr.,* and *A. Marvin Lungren,* for appellants.

*Edwin D. Crites,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

The Valentine Oil Company, a corporation, and C. M. Valentine as alleged trustee therefor, brought this action as plaintiffs, seeking specific performance of an oil and gas lease escrow agreement, together with equitable relief and damages.

Defendants Joseph V. Webster, the depositary, and

Edwin D. Crites, who was a lessor and allegedly acted as agent for all lessors in executing the escrow agreement, together with other lessors named as defendants in plaintiffs' amended and supplemental petition, demurred thereto, specially upon the ground among others that there was a defect of parties defendant, and generally upon the ground that plaintiffs' petition did not state facts sufficient to constitute a cause of action. The trial court sustained the demurrer "generally" and, upon failure of plaintiffs to plead further, dismissed the action at plaintiffs' costs. Thereafter plaintiffs appealed, assigning that the court erred in sustaining the demurrer and dismissing the action. We conclude that the assignment has no merit.

In that connection, the rule is that: "An order or decree sustaining a demurrer will be affirmed if any one ground of demurrer is well taken, even though the ground on which the ruling is based is not well taken or the order or decree sustaining the demurrer is general and does not indicate the ground on which it is based." 5 C. J. S., Appeal and Error, § 1464, p. 80. In the light of such rule, we conclude that the mere fact that the trial court sustained the demurrer "generally" could not make it only a general demurrer, or require reversal of the judgment.

At the outset, it should be noted that two of the lessors and the wives of two of them who joined as lessors were not named as parties defendant. On the other hand, the lessee of all the leases, Roy R. Powers, and his agent, A. A. Kennedy, were named as defendants, each of whom, as alleged in plaintiffs' petition, was "a citizen and resident of Casper, Natrona County, Wyoming" who had been "advised in writing of the commencement and pendency of this case." As a matter of course, such notice was not service of process, and their special appearance was sustained. In that connection, it is argued that upon plaintiffs' theory of recovery such persons were all indispensable parties within the purview

of Local Union v. Western Public Service Co., 140 Neb. 186, 299 N. W. 531, and our supplemental opinion, Cunningham v. Brewer, 144 Neb. 218, 16 N. W. 2d 533. Be that as it may, we dispose of the case upon the merits as upon general demurrer, rather than upon such ground.

We have examined plaintiffs' petition, keeping in mind the rule that: "A general demurrer admits all allegations of fact in the pleading to which it is addressed, which are issuable, relevant, material, and well pleaded; but does not admit the pleader's conclusions of law or fact." In re Estate of Halstead, 154 Neb. 31, 46 N. W. 2d 779.

It is also the rule that: "In passing on a demurrer to a petition, the court will consider an exhibit attached thereto and made a part thereof, if the allegations stated therein either aid the petition in stating a cause of action or charge facts going to avoid liability on the part of the defendant." Carson v. City of Hastings, 81 Neb. 681, 116 N. W. 673.

The petition is voluminous and can only be summarized. After identifying the parties and describing their respective capacities or positions in the litigation, plaintiffs alleged that on or about April 8, 1947, C. M. Valentine, acting as trustee for Valentine Oil Company, entered into a written contract with Roy R. Powers who was then engaged in the purchase of oil and gas leases and drilling operations in connection therewith. A copy of such agreement, marked exhibit A, was attached to and made a part of the petition. Therein, C. M. Valentine and Roy R. Powers agreed to start a leasing program within 10 days, time being of the essence. Valentine agreed to provide the necessary geological data in his possession, and Powers agreed to procure leases in certain Sheridan and Dawes County townships. Such leases were to be taken in the name of one or the other of the parties, and subsequently divided and assigned equally between them upon a designated formula, giving due consideration to the geological value

of each. It was also agreed that simultaneously with conclusion of such leasing program, a mutually agreeable drilling contract for a test well would be entered into between Powers and Valentine Oil Company, of which C. M. Valentine was president. In that connection, plaintiffs alleged as a conclusion that all conditions precedent in such agreement were performed by them. It will be noted, however, that none of its terms make any mention of an escrow agreement. Concededly, however, all leases here involved were made with Powers as lessee and he as such subsequently executed a written escrow agreement with Edwin D. Crites, who in so doing allegedly acted as agent for lessors.

Such escrow agreement was executed on April 28, 1947. A copy thereof, marked exhibit B1, was attached to and made a part of plaintiffs' petition. Its provisions appointed Joseph V. Webster as escrow officer and agreed that certain attached oil and gas leases should be deposited with him to be held in escrow and disposed of by him on the following terms and conditions: "If the said Powers, or his assigns, shall install a competent rotary drilling rig at a location as hereinafter provided, shall set his *surfact* (surface) casing, and shall commence or cause to be commenced the drilling of a test well for oil and gas, on or within one mile from the outer border of the following described lands to wit: * * * (the drilling of said test well thereafter to be continued, with all due diligence, and without interruption, and to be completed until the same has reached the granite or a depth of 4500 feet, which ever is the lesser depth, or until oil, petroleum or gas shall have been produced from said well in paying quantities), on or prior to the 1st day of August, 1947, then the said Webster is hereby authorized and directed to deliver over the aforesaid leases to the said Powers, upon his having installed such rotary drilling rig, at such location and having set his surface casing and having commenced the drilling of said test well.

"If, however, the said Powers or his assigns shall fail so to install such competent rotary drilling rig, at such location and so to set his surface casing, and so to commence or cause to be commenced the drilling of said test well for oil and gas on or prior to the 1st day of August, 1947, and as hereinabove provided, the said Webster is hereby authorized and directed to return all of the said oil and gas leases to the said Edwin D. Crites, without any notice to the said Powers being required, and without it being necessary to obtain the consent of the said Powers thereto, and thereupon this agreement, and the said leases shall be and become null and void, and all rights, obligations and liabilities thereunder shall forthwith cease, determine and be at an end as to the said Crites, the said respective lessors the said Powers, and the said Webster.

"IT IS FURTHER AGREED: That time of performance is of the essence of this contract; * * *

"It is particularly agreed that said Webster as escrow party herein shall be under no liability whatever to the parties to this contract, except to dispose of the said escrowed leases in conformity to the terms hereof."

Plaintiffs then alleged that the leases were deposited in conformity with such escrow agreement. Copies of such leases, marked exhibits B2, B3, B4, B5, B6, and B7, respectively, were attached to and made a part of plaintiffs' petition. Three of them were dated April 19, 1947, two were dated April 22, 1947, and one was dated May 2, 1947. In all other material respects they were identical except one lease, which specifically provided for absolute termination thereof if no well was commenced within a designated area prior to August 1, 1947, and such lessor therein was not made a party to this action. Each lease respectively recited a consideration of $10, and each ran for a primary period of 3 years from "this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee." However, "If no well be commenced on said land on or be-

*fore one year from date this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in The First National Bank of Chadron, Chadron, Nebraska or its successors * * * the sum of * * * DOLLARS, * * *."* Preceding the word "DOLLARS" a substantial sum was typed in each lease, payment of *"which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from said date."* (Italics supplied.)

Also attached to plaintiffs' petition and made a part thereof was exhibit D, a copy of a written drilling contract entered into on July 18, 1947, between Valentine Oil Company, by C. M. Valentine, president, and Roy R. Powers. The recited consideration was one dollar and "the competent, diligent and faithful performance of the covenants, conditions and requirements herein stipulated and provided for * * *." Therein Powers agreed to drill a test well within a designated location in Sheridan County to the approximate depth of 3,500 feet (1,000 feet less than that required by the escrow agreement) unless oil and gas were found at a lesser depth in commercial quantities, and Valentine Oil Company agreed to pay Powers substantial designated sums "when surface pipe has been set and cemented in" and again each time such well progressed to six respective designated graduate foot scales of depth. Powers agreed to drill such well and commence it with sufficient size tools and pipe, not later than August 1, 1947. The agreement specifically provided: "Due consideration shall at all times be given to the conditions, terms and requirements provided for within and by a. certain *escorw* (escrow) agreement entered into on April 28th, A. D. 1947, by and between Edwin D. Crites, of Chadron, Nebraska, and Roy R. Powers, of Casper, Wyoming, whereby certain oil and gas leases are being held in escrow by one J. V. Webster * * * and which escrow agreement concerns various leases in the aforesaid town-

ships and Range." A supplemental agreement, executed by the same parties on the same date, was attached thereto and made a part thereof, which clarified the manner, the time and place of deposit, and payment of the first and succeeding installments to be made by Valentine Oil Company, and then provided that within 24 hours after reaching any pay-off depth provided for, said second party, Powers, should have the option of removing his equipment from said lease and drill site if the funds for the next successive pay-off were not deposited by Valentine Oil Company in the Bank of Chadron in advance, as specifically required by the agreement.

Exhibit E, attached to plaintiffs' petition, and made a part thereof, was a written agreement dated August 7, 1947, between Roy R. Powers and C. M. Valentine, and insofar as important here provided that in consideration of "One Dollar, and performance of other prior agreements between these parties" Powers agreed to give Valentine an assignment of an undivided one-half interest in all oil and gas leases that he then had or might thereafter record, including certain designated leases then held and those then in escrow which had been acquired on or before August 7, 1947. In that connection, it will be noted that plaintiffs were not parties to the escrow agreement or the leases, and that none of the lessors or the depositary were parties to or privy with any of the other agreements heretofore set forth.

Plaintiffs alleged that after making the drilling contract, a rig of the kind and character provided in the escrow agreement was set up for operation at a designated point; that the drilling requirements provided for therein were complied with, and that oral and written demands were made upon defendants to turn over the leases so that they could be subsequently divided between the lessee and plaintiffs; but lessee, acting in concert with defendants, refused to take affirmative action and turn certain leases over to lessee so that such division could then be made. In that connection, by whom

or when such demand was made was not alleged except it appears from exhibit C, attached to and made a part of plaintiffs' petition but stricken therefrom by the trial court, that on August 22, 1947, plaintiffs' attorney wrote a letter to lessee Powers demanding that he take the necessary steps, legal or otherwise, to compel the depositary and others directly or indirectly involved, to turn over to him forthwith all the escrow leases so that plaintiffs might receive their contractual portion thereof. In such letter it was said: "I am sending copies of this letter by 'Registered Mail' to Attorneys Edward D. Crites and Charles A. Fisher, and to Mr. J. V. Webster, The First National Bank of Chadron, Nebraska, and your Mr. A. R. Kennedy, with the hope that you will do voluntarily that which I am sure I can make you do if all of you still persist in your present refusals to carry out your agreements."

Plaintiffs also alleged as a conclusion that they had fully performed all conditions as required by their agreements, but in the next paragraph admitted that they ran out of money with which to pay the lessee Powers as provided in the drilling contract, whereupon lessee exercised his option, removed his drilling rig, equipment, and supplies, and abandoned the drilling operations.

The crux of plaintiffs' contention in their brief is that the grantors under an escrow agreement, as well as the depositary, are liable to an assignee of the grantee for delivery of the subject of the escrow agreement, when it has not been delivered to such assignee because of acts of the grantors and depositary. In that connection, plaintiffs contend that they were assignees of the lessee, but their petition discloses that in fact they were not. They simply had an agreement with lessee that after performance by them of prior agreements, he would assign to them a one-half interest in such oil and gas leases as had been acquired by lessee on or before August 7, 1947, but the leases here involved were never so acquired, and plaintiffs did not perform prior agree-

ments.   The theory of plaintiffs' case in that regard is that the depositary should be required to deliver the leases in escrow to lessee, who should then be required to assign a one-half interest therein to plaintiffs.

In that connection, however, the petition does not disclose that any proper demand was ever made by lessee upon the depositary for their delivery.   Further, with regard to timely performance of conditions of the escrow agreement, the petition discloses that lessee, on some date not disclosed, commenced the drilling of a well at a designated location, but he concededly did not continue such operations with all due diligence and without interruption as provided in the escrow agreement, because plaintiffs did not perform their drilling contract with lessee by providing funds to complete the well.

It is generally the rule, as stated in 21 C. J., Escrows, § 39, p. 893, that: "Upon performance of the condition the grantee or obligee is entitled to delivery, which will be enforced by a decree of court. * * *   But a breach of the escrow agreement by the grantee may preclude him from bringing an action to enforce the terms of the agreement; thus where the grantee is in default, he cannot enforce a delivery of the deed to him by the depositary."   See, also, 19 Am. Jur., Escrow, § 20, p. 438, where it is said: "In the law governing performance of escrow agreements, there is no doctrine of substantial compliance to be found.   Compliance must be full and to the letter, or else it constitutes merely noncompliance.   Strict and full performance only can discharge a condition precedent to valid delivery by the escrow holder.   The question involved is one of performance of the escrow agreement, not of the ability of the parties to perform the agreement, since such ability, without full performance, cannot amount to compliance."

As stated in 30 C. J. S., Escrows, § 10, p. 1211:   "The conditions on which instruments are deposited as escrows are ordinarily to be performed by the grantee or obligee, but a condition resting on such party may be satisfied

by the act of the depositor. It has been held that performance by a person other than the one specified in the escrow contract is insufficient to entitle such other person to delivery of the instrument; but the necessity of action by a specified party may be obviated by his transfer of interest to another." Also, as stated in 30 C. J. S., Escrows, § 9, p. 1206: "The grantor or depositor loses control over the instrument placed in escrow, although he retains legal title and its concomitants until performance of the condition; but, where the escrow is abandoned, it becomes ineffectual for any purpose."

It is also true, as here, that: "Where time is of the essence of a contract, the depositary has no authority to allow one of the parties to perform the conditions after the expiration of such time." 21 C. J., Escrows, § 24, p. 879. Further: "The grantor or obligor of an instrument held as an escrow is entitled to its return when the grantee or obligee fails to perform the conditions of the escrow contract, or the contingency specified has not occurred." 30 C. J. S., Escrows, § 12, p. 1215. It is also the rule that: "An action for specific performance of the contract will not be sustained if there is a want of certainty in respect of the persons to whom the conveyance is to be made." 30 C. J. S., Escrows, § 15, p. 1220.

We can only conclude from plaintiffs' petition that lessee and plaintiffs as well failed to perform, and abandoned the escrow agreement, and that plaintiffs, even assuming for purposes of argument only that they were assignees, acquired nothing until all conditions of the escrow agreement were performed. See, Henderson v. Ferrell, 183 Pa. 547, 38 A. 1018; Dayle L. Smith Oil Co. v. Griffin (Tex. Civ. App.), 104 S. W. 2d 167.

Plaintiffs also alleged, as a conclusion, that defendants colluded to defeat the agreements plaintiffs had made with the lessee, thus preventing them from securing their one-half of the leases in order to sell them or obtain financial aid therewith and obtain money with which

to complete the test well, thereby attempting to work a termination of all such leases for failure to drill a well or pay delay rentals. It appears without question that no well was ever commenced or continued with all due diligence and without interruption as contemplated by the escrow agreement, the assignment agreement, the drilling agreement, or the leases. Also, it is conceded that although lessee and plaintiffs at all material times well knew the entire situation, neither of them has ever tendered in court or out, or paid all or any part of the annual delay rentals which had accrued and were due and payable as respectively provided in said leases on or before April 19, 1948, April 22, 1948, or May 2, 1948, or those which have since annually accrued. Plaintiffs' petition simply "tenders and offers to pay to a proper party designated by the Court, the Valentine Oil Company's proper or proportionate share of said first annual rentals to become due to said lessors, or if that be in any way or manner inadequate or improper. all of said annual rentals, so as to prevent the voiding of said leases herein referred to."

In that connection, it will be noted that on March 5, 1949, the date of the original filing of plaintiffs' petition, all of said leases had already terminated as to all parties, lessor, lessee, or assignee, for failure to tender or pay the annual delay rentals already accrued and unpaid. Further, almost a year before plaintiffs' amended and supplemental petition was filed on April 4, 1951, which is the one here involved, the primary term of 3 years provided in each lease had expired, and said leases were also terminated thereby.

The effect of simple assignments, assuming for purposes of argument only that plaintiffs had such, would be to put plaintiffs in the shoes of Powers, the lessee. with just his rights and obligations as respects the lessor. Collins v. Atlantic Oil Producing Co., 74 F. 2d 122. As stated in that opinion: "The obligations between assignor and assignee are what the contract of assignment

makes them in the light of the provisions of the lease assigned." See, also, Wickham v. Skelly Oil Co., 106 F. Supp. 61.

The oil and gas business is still in its infancy in this state, but this court has already written opinions in two cases involving delay rental provisions. The delay rental clause here involved has been heretofore set forth in italics and will not be repeated again. Lincoln Land Co. v. Commonwealth Oil Co., 109 Neb. 652, 192 N. W. 219, involved a somewhat different clause, but in the opinion it was said: "A lease for oil and other minerals may be terminated or abandoned by failure of lessee to perform his agreements to prospect for and produce oil or other minerals in paying quantities or otherwise pay stipulated rentals. (Citing cases) * * * The petition pleads facts showing defendant terminated the lease or abandoned all rights under it."

Fritsche v. Turner, 133 Neb. 633, 276 N. W. 403, involved a delay rental clause almost identical with that presented in this case. Therein this court held: "An oil and gas lease, providing that, unless work is commenced by a certain time, or unless the lessee pay a rental stated to renew the lease, it shall terminate, confers an optional right upon the lessee and should be strictly construed in favor of the lessor and against the lessee." In so holding, the opinion cited and quoted with approval from McKinley v. Feagins, 82 Okl. 193, 198 P. 997, wherein it was said: "* * * 'Held, a failure on the part of the lessee to commence the drilling of a well or to pay the rental as stipulated automatically terminated the lease contract.

" 'An oil and gas lease containing the "unless" clause confers an optional right upon the lessee, and should be strictly construed in favor of the lessor and against the lessee, and time is of the essence of the contract.' " As stated in our opinion: "The foregoing case is typical of the almost unanimous holding in all the states where gas and oil are found." An extensive note citing and discuss-

ing the aforesaid opinions and numerous other related cases will be found in 31 Nebraska Law Review, p. 374.

Generally, courts have treated such delay rental provisions as a special limitation. As stated in Restatement, Property, § 23, p. 55: "The term 'special limitation' denotes that part of the language of a conveyance which causes the created interest automatically to expire upon the occurrence of a stated event, and thus provides for a terminability in addition to that normally characteristic of such interest."

Such clauses do not obligate the lessee to either drill or pay delay rentals, but if he does neither, the lease terminates without any action being required by the lessor or the lessee. In other words, its termination is automatic and self-operating. See, Weiss v. Claborn (Tex. Civ. App.), 219 S. W. 884; Bailey v. Williams (Tex. Civ. App.), 223 S. W. 311; Phillips Petroleum Co. v. Curtis, 182 F. 2d 122; Ellison v. Skelly Oil Co., 206 Okl. 496, 244 P. 2d 832; 2 Summers, Oil and Gas, Perm. Ed., § 452, p. 494. As stated in Humble Oil Co. v. Davis (Tex. Comm. App.), 296 S. W. 285: "It was a limitation upon the term or period of the grant, and, upon the failure to drill or pay as aforesaid, the estate created by the lease ceased and reverted to the lessors." See, also, Guerra v. Chancellor (Tex. Civ. App.), 103 S. W. 2d 775.

Courts generally have strictly construed such special limitation clauses. In doing so, they have held that time is of the essence of the contract, and that failure to pay within the time specified in the lease automatically terminates the lease without the necessity of any affirmative action by the lessor. See, Ford v. Barton (Tex. Civ. App.), 224 S. W. 268; Ford v. Cochran (Tex. Civ. App.), 223 S. W. 1041; Weiss v. Claborn, *supra;* Bailey v. Williams, *supra;* Phillips Petroleum Co. v. Curtis, *supra;* Vaughan v. Doss, 219 Ark. 963, 245 S. W. 2d 826; McLaughlin v. Brock (Tex. Civ. App.), 225 S. W. 575; Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S. W. 2d 27; Empire Gas & Fuel Co. v. Saunders, 22 F. 2d 733;

Coker v. Benjamin (Tex. Civ. App.), 83 S. W. 2d 373; Guerra v. Chancellor, *supra*.

In that connection, also, it is noted that it is essential that the lessee or his assignee fulfill all of·the requirements and pay or make a proper tender of such delay rentals, which should be continuous, and if litigation results, then proper tender should be made in the pleadings. Hamilton v. Baker, 147 Tex. 240, 214 S. W. 2d 460; White v. Dennis (Tex. Civ. App.), 220 S. W. 161.

Further, the responsibility of properly construing the lease and making timely payment or tender of delay rentals is imposed upon the lessee or his assignee, and in that regard he is responsible for the failure of his agents. See, Appling v. Morrison (Tex. Civ. App.), 227 S. W. 708; Keeler v. Dunbar, 37 F. 2d 868; Humble Oil & Refining Co. v. Mullican, 144 Tex. 609, 192 S. W. 2d 770; Hill v. Stanolind Oil & Gas Co., 119 Colo. 477, 205 P. 2d 643; Superior Oil Co. v. Stanolind Oil & Gas Co., —— Tex. ——, 240 S. W. 2d 281.

Exceptions have been made to some of the foregoing conclusions in a few cases where delay rental provisions in the lease were materially ambiguous or the lessor was estopped by his own conduct which was such as to require the application of equitable principles, but none of such exceptions have any application in this case.

In the light of such rules and the situation here presented, we conclude that the respective leases involved each automatically terminated at the end of the first year for failure of lessee or plaintiffs to commence a well in good faith within a year or any time thereafter, or to timely tender or pay delay rentals as required therein. In that situation, there were no leases existent when this action was commenced by plaintiffs or since. As stated in 58 C. J., Specific Performance, § 35, p. 881: "Based on the general equitable doctrine that equity will not render a decree which it is impractical to carry out, and because equity will not do a vain thing, a de-

cree for the specific performance of a contract will not be granted if it would be, or could be made, nugatory and useless, or if it would be ineffectual or not beneficial to plaintiff." See, also, Conrad v. Kaup, 137 Neb. 900, 291 N. W. 687; Franklin v. Zarmstorf, 145 Neb. 21, 15 N. W. 2d 190. Such statement is also controlling here.

The escrow leases having terminated through plaintiffs' own failure to tender or pay delay rentals or perform the contracts made by them, any allegations of collusion to defeat plaintiffs' rights fall of their own weight, and there is no basis for the awarding of any relief.

For reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is affirmed.

AFFIRMED.