IN THE

## SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT CORYDON, NOVEMBER TERM, 1821, IN THE SIXTH YEAR OF THE STATE.

---

### The case of MARY CLARK, a woman of colour.

A free woman of colour above 21 years of age bound herself by indenture in this state, for a valuable consideration, to serve the obligee as a menial servant for 20 years: *Held*, that a specific performance of the contract could not be enforced; and that, upon a writ of *habeas corpus*, she had a right to be discharged from custody.

An application to be discharged on *habeas corpus* proves the service to be involuntary within the meaning of the constitution.

An indenture, executed out of this state by a negro or mulatto, is void; and can neither be specifically enforced, nor made the foundation of an action for damages.

It is a general rule, that covenants for personal service cannot be specifically enforced, either at common law, or by statute. The case of apprentices depends on parental authority: that of soldiers and sailors on national policy.

APPEAL from the *Knox* Circuit Court.

*Tuesday, November 6.*

HOLMAN, J.—In obedience to a writ of *habeas corpus*, issued by the *Knox* Circuit Court, *G. W. Johnston* brought before that Court the body of *Mary Clark*, (a woman of colour,) said to be illegally detained by him; and assigned as the cause of her detention, that she was his servant by indenture, executed at *Vincennes* in this state, on the 24th of *October*, 1816: which indenture is set out in the return, regularly executed and acknow-

ledged, by which the said *Mary* (being a free woman) voluntari-
ly bound herself to serve him as an indented servant and house
maid for 20 years. This cause of detention was deemed suffi-
cient by the Circuit Court, and the said *Mary* remanded to the
custody of the said *Johnston.* She has appealed to this Court.

This application of *Mary Clark* to be discharged from her state of servitude, clearly evinces that the service she renders to the obligee is involuntary; and the constitution, having determined that there shall be no involuntary servitude in this state, seems at the first view to settle this case in favour of the appellant. But a question still remains, whether her service, although involuntary in fact, shall not be considered voluntary by operation of law, being performed under an indenture voluntarily executed. This indenture is a writing obligatory. The clause in the 7th section of the 11th article of the constitution that provides, that no indenture hereafter executed by any negro or mulatto without the bounds of this state, shall be of any validity within this state, has no bearing on it. An indenture executed by a negro or mulatto out of this state, is, by virtue of this provision, absolutely void; and can be set up neither as a demand for the services therein specified, nor as a remuneration in damages for a non-performance. But the constitution, having confirmed the liberty of all our citizens, has considered them as possessing equal right and ability to contract, and, without any reference to the colour of the contracting parties, has given equal validity to all their contracts when executed within the state. We shall, therefore, discard all distinctions that might be drawn from the colour of the appellant; and consider this indenture as a writing obligatory; and test it, in all its bearings, by the principles that are applicable to all cases of a similar nature. It is a covenant for personal service; and the obligee requires a specific performance. It may be laid down as a general rule, that neither the common law nor the statutes in force in this state, recognize the coercion of a specific performance of contracts. The principal if not the only exceptions to this general rule are statutory provisions; few if any of which are applicable to this state; and none of them has any bearing on this case. Apprentices are compellable to a specific performance of the articles of apprenticeship; but their case rests on principles of a different nature. They are not considered as performing a contract of their own; but acting in conformity

to the will of those whose right and duty it was to exact obedience from them. That right and duty existed by nature in the parent, and are, by legal regulations, transferable to the master during the minority of the child: and when transferred, either by the parent, or those who stand *in loco parentis*, the duty of obedience arises, and is enforced, on the ground of parental authority, and not on the principle of a specific performance of contracts; and cannot be urged as an exception to the general rule, that the coercion of a specific performance of contracts is not contemplated in law. The case of soldiers and sailors depends on national policy, and cannot be used in the elucidation of matters of private right.

There are some covenants that may be specifically enforced in equity; but they are of a very different nature from the contract before us. They are mostly covenants for the conveyance of real estate, and in no case have any relation to the person. But if the law were silent, the policy of enforcing a specific performance of a covenant of this nature, would settle this question. Whenever contracting parties disagree about the performance of their contract, and a Court of justice of necessity interposes to settle their different rights, their feelings become irritated against each other; and the losing party feels mortified and degraded in being compelled to perform for the other what he had previously refused, and the more especially if that performance will place him frequently in the presence or under the direction of his adversary. But this state of degradation, this irritation of feeling, could be in no other case so manifestly experienced, as in the case of a common servant, where the master would have a continual right of command, and the servant be compelled to a continual obedience. Many covenants, the breaches of which are only remunerated in damages, might be specifically performed, either by a third person at a distance from the adversary, or in a short space of time. But a covenant for service, if performed at all, must be personally performed under the eye of the master; and might, as in the case before us, require a number of years. Such a performance, if enforced by law, would produce a state of servitude as degrading and demoralizing in its consequences, as a state of absolute slavery; and if enforced under a government like ours, which acknowledges a personal equality, it would be productive of a state of feeling more discordant and irritating than

slavery itself.   Consequently, if all other contracts were specifically enforced by law, it would be impolitic to extend the principle to contracts for personal service.   Very dissimilar is the case of apprentices.   They are minors, and for the want of discretion, are necessarily under the control of parents, guardians, or masters; and obedience is exacted from them, whether considered as children, wards, or apprentices.   They are incapable of regulating their own conduct, and are subjected by nature and by law to the government of others; and that government, instead of humbling and debasing the mind, has a tendency to give it a regular direction, and a suitable energy for future usefulness.   But it is not the master who in this case applies for legal aid.   He has not appealed to a Court of justice to obtain a specific performance of this indenture.   All he asks from the constituted authorities, is, that they would withhold their assistance from his servant.   Does this alter the case in his favour?   Is it more consistent with good policy, that a man possessing the power, should be left to enforce a specific performance of a contract in his own behalf, than that the officers of justice, on a full consideration of his case, should enforce it for him?   These questions are not only easily answered in the negative, but their reverse is unquestionably true.   Deplorable indeed would be the state of society, if the obligee in every contract had a right to seize the person of the obligor, and force him to comply with his undertaking.   In contracts for personal service, the exercise of such a right would be most alarming in its consequences.   If a man, contracting to labour for another a day, a month, a year, or a series of years, were liable to be taken by his adversary, and compelled to perform the labour, it would either put a stop to all such contracts, or produce in their performance a state of domination in the one party, and abject humiliation in the other.   We may, therefore, unhesitatingly conclude, that when the law will not directly coerce a specific performance, it will not leave a party to exercise the law of the strong, and coerce it in his own behalf.   A state of servitude thus produced, either by direct or permissive coercion, would not be considered voluntary either in fact or in law.   It presents a case where legal intendment can have no operation.   While the appellant remained in the service of the obligee without complaint, the law presumes that her service was voluntarily performed; but her application to the Circuit Court to be dis-

A.

Nov. Term, 1821.

charged from the custody of her master, establishes the fact that she is willing to serve no longer; and, while this state of the will appears, the law cannot, by any possibility of intendment, presume that her service is voluntary. The case of an apprentice presents a different state of things. The minor is considered as having no legal will. He has neither the power nor the right of choosing, whether he will obey or disobey the commands of his master. The law, therefore, on account of the immaturity of his will, cannot presume that any of his services are involuntarily performed. The appellant in this case is of legal age to regulate her own conduct; she has a right to the exercise of volition; and, having declared her will in respect to the present service, the law has no intendment that can contradict that declaration. We must take the fact as it appears, and declare the law accordingly. The fact then is, that the appellant is in a state of involuntary servitude; and we are bound by the constitution, the supreme law of the land, to discharge her therefrom.

*Per Curiam.*—The judgment is reversed, with costs; and the woman discharged.

*Dewey*, for the appellant.

*Call*, for the appellee.