# AMERICAN SODIUM CO. *v.* SHELLEY, Et Ux.

## No. 2810

April 5, 1929.                    276 P. 11.

*H. Pilkington, Hoyt, Norcross, Cheney & Hoyt,* for Appellant:

*Green & Lunsford,* for Respondent:

## OPINION

By the Court, SANDERS, J.:

After the commencement of this suit and during its trial the name of plaintiff, Nevada Sodium Company, was changed to that of American Sodium Company, and, upon court order, the case proceeded to judgment in the name of American Sodium Company, a corporation, as plaintiff, against W. F. J. Shelley and Jennie Baldwin Shelley, husband and wife, et al., defendants. Their codefendants, Arthur Warnken and W. H. Yarco, are not parties on appeal from the judgment upon the judgment roll alone. For convenience we shall designate the parties as plaintiff and defendants.

■ Counsel for defendants insist that, a motion for new trial having been made and the action being one in equity, we should consider the transcript of the evidence on appeal from the order denying the defendants' motion for new trial and determine whether the evidence supports the findings and the findings the judgment. It is now settled that error cannot be predicated upon the insufficiency of evidence unless the evidence is brought into the record by a bill of exceptions in conformity to the provisions contained in the act regulating proceedings on motions for new trials and on appeal in civil cases. Stats. 1923, p. 163, c. 97. The evidence not having been brought into the record in this case in conformity to the statute, it cannot be considered. Markwell v. Gray, 50 Nev. 427, 265 P. 705.

For present purposes the pleadings consist of the complaint, the separate answers of defendants, and the second amended cross-complaint of the defendant Jennie Baldwin Shelley, and the replies. The answers contain practically the same allegations, with this difference— the answer of the defendant husband shows that he

assigned whatever interest he has or had in the subject of the controversy to his wife as her separate property, and he defends solely in his capacity as husband. The wife defends in her capacity as assignee and in her own right. The plaintiff interposed a demurrer to the cross-complaint, which was sustained. The case was tried upon issues joined upon the complaint, answers, and replies which resulted in a judgment in favor of the plaintiff and against the defendants in accordance with the trial court's findings of fact and conclusions of law after a full hearing upon the pleadings and evidence.

The facts leading up to this suit as disclosed by the pleadings, stated in our way, are substantially as follows: Under and by virtue of an act of Congress, approved February 25, 1920, entitled "An Act to promote the mining of coal, phosphate, oil, oil shale, gas, and sodium on the public domain" (41 Stat. at L. 437; U. S. C. title 30, sec. 181 and following [30 USCA, sec. 181 et seq.]), the secretary of the interior granted to each, W. F. J. Shelley and Arthur Warnken, a sodium prospecting permit to prospect the land described therein for sodium. The permits are not before us, but it is inferable from the pleadings that each permit was in the form of permits adopted by the secretary of the interior under rules and regulations of the department of the interior as authorized by said act of Congress (Cir. 699; 47 Land Dec. 531).

On January 15, 1924, Arthur Warnken and W. F. J. Shelley each assigned and transferred his permit to Arthur Warnken, W. F. J. Shelley, and one W. H. Yarco as trustees named in an instrument in writing, called a declaration of trust, to be carried out in accordance with the articles of trust made a part of the agreement under the name and style of Wabuska Development & Prospecting Association. The assignment and transfer of said permits were made without the consent in writing, or at all, of the secretary of the interior.

Said declaration of trust was caused to be recorded by W. F. J. Shelley in the records of the county of Lyon, where the land described in said permits is situate.

The complaint filed herein, on March 1, 1926, proceeds upon the theory that the recordation of said declaration of trust, with said assignments, created a cloud upon the land described in an indenture of lease entered into, by and between the government of the United States, as lessor, and said Arthur Warnken and one Clark J. Guild, as lessees, bearing date on June 29, 1925, whereby the government granted and leased to said lessees the exclusive right and privilege to mine, remove, and dispose of all the sodium and other minerals in, upon, or under the tract of land described therein, containing 1,440 acres, situate in Lyon County, Nevada. On August 4, 1925, said lease was assigned and transferred to the Nevada Sodium Company, a corporation, organized under the local law, with Arthur Warnken, as president, and Clark J. Guild, as secretary. The assignment of the lease was approved by the secretary of the interior in writing on September 12, 1925. It is conceded that the lease was granted under and by virtue of the leasing act of Congress, approved February 25, 1920, supra. The corporation entered into possession of the leased premises and expended large sums of money in excess of $18,000 in mining, removing, and disposal of sodium in the forms named in said act, and continued and now continue to mine, remove, and dispose of sodium in accordance with the terms, conditions, and covenants of said lease.

The separate answers of the defendants admit the execution, delivery, and assignment of the lease, and in this connection assert that the lease passed to the lessees their respective interest therein, subject to the equitable rights of the defendants. This allegation is predicated upon other allegations of the complaint and answers which show that the lease covered a portion of the lands described in the sodium permit granted Arthur Warnken hereinabove referred to. The answers further admit that the Warnken permit was assigned as a trust estate to the trustees named in said declaration of trust in violation of the condition expressed in the permit, namely, "not to assign or transfer the permit granted hereby without the express consent in writing of the

secretary of the interior." In this connection each of the defendants aver and assert that the secretary of the interior possessed and possesses no power or authority to require such a condition to be included in the form of sodium permit, and in doing so the secretary of the interior exceeded his authority. This allegation is made the ground for demurrer to the cross-complaint of the defendant Jennie Baldwin Shelley. We may as well dispose at this point of the alleged error in sustaining the demurrer to the cross-complaint.

██ In view of the leasing act of Congress, which admittedly authorizes the secretary of the interior to prescribe all necessary and proper rules and regulations and to do any and all things necessary to carry out and accomplish the purposes of the act (U. S. C. title 30, sec. 189 [30 USCA, sec. 189]), and particularly, the authority contained in section 261 (U. S. C. title 30 [30 USCA, sec. 261]), the secretary of the interior, wisely, we think, incorporated in sodium permits the condition above quoted. It is just as essential to the proper carrying out and accomplishment of the purposes of the leasing act of Congress for the secretary of the interior to know the qualifications of the assignee of a permit as it if for him to know the qualifications of the permittee; otherwise, a qualified permittee could with impunity assign or transfer his permit to an unqualified assignee, and thus abrogate the act itself.

We are not in accord with the contention of counsel for the defendants that such regulation and condition is inconsistent with and repugnant to law. Whatever may be the character of the right secured by a sodium permit, it is not an indefeasible right which comes from a grant of title ownership, but depends upon the qualifications of the permittee and at all times upon certain acts to be continuously performed for a period not exceeding two years. Section 261. The condition not to assign or transfer the permit granted Arthur Warnken without the express consent in writing of the secretary of the interior, being in our opinion necessary and proper to carry out and accomplish the purposes of the leasing act

of Congress, it is not inconsistent with or repugnant to law. This being true, the regulation should have the force and effect of a statute. Hodgson v. Midwest Oil Co. (D. C.) 297 F. 273. This conclusion, however, is not decisive of all the legal questions involved in the appeal from the judgment.

The cross-complaint of the defendant Jennie Baldwin Shelley proceeds upon the theory that their codefendant, Arthur Warnken, in violation of his fiduciary duty and with the purpose and intention of excluding his codefendants from the benefits to be derived from his sodium permit so assigned and transferred by him to the trustees named in his declaration of trust, procured a lease from the government to mine, remove, and dispose of all the sodium in, upon, and under a portion of the land covered by the Warnken permit, and that said Warnken and said Guild hold the legal title to the leasehold interest granted subject to and in trust for the defendants as to their undivided one-third interest in said leasehold. The defendant, by her cross-action, seeks, in short, to have a trust impressed upon so much of the leasehold of plaintiff as is covered by the sodium prospecting permit granted Arthur Warnken.

In order to support the view in equity and good conscience that Warnken procured the lease in violation of his fiduciary duty, it would be necessary to allege definite facts (not mere inferences and conclusions) sufficient to show an existing fiduciary relation between the defendants and Arthur Warnken. There is nothing in the cross-complaint to show this unless such relation necessarily arose because of the assignment for a consideration by Warnken of his sodium permit, as a trust estate. We are of opinion that a mere sodium prospecting permit, as authorized by the leasing act of Congress, is a mere privilege, personal in character, and cannot be trusteed. A permit is granted only to those who possess the qualifications prescribed by the act, and is, for a period of not exceeding two years, at all times dependent upon the execution of the permit in accordance with its terms. The permit is exclusive, it is true, but in no

event can it ripen into title ownership. The most that is granted by the government as a reward for the discovery of commercial sodium in commercial quantities is that the permittee is entitled to a lease of one-half the land embraced in his permit, in compact form. Cir. 699; 47 Land Dec. 529. There is nothing in the cross-complaint to show that sodium was discovered by the permittee or his assignee upon the land embraced in the permit. In this situation we do not perceive upon what principle of law or equity the defendants can have the lease in question impressed with a trust in their favor upon that portion of the land embraced in the Warnken permit.

One cannot impose a trust on a leasehold that neither he nor his grantor at any time were, or now are, entitled to receive, or any part thereof. Hodgson v. Federal Oil & Development Co., 274 U. S. 15, 47 S. Ct. 502, 71 L. Ed. 901, 54 A. L. R. 869, affirming (C. C. A.) 5 F. (2d) 442. Further in this connection we may observe that a court of equity is without jurisdiction to grant relief to one claiming a preference right as against one in possession under a lease from the government, the title still being in the government. Wilson v. Elk Coal Co. (C. C. A.) 7 F. (2d) 112, and cases cited. In no admissible view of the leasing act of Congress is the cross-complainant shown to be entitled to the lease in controversy or any interests therein. Her cross-action seems to be based entirely upon the pleader's misconception of the applicable law—the leasing act of Congress designed to promote the mining of and the conservation of the valuable deposits on the public domain named in the act, coal, phosphate, oil, oil shale, gas, and sodium. The conservation of these deposits is a matter of grave public moment and concern, and their disposition cannot be too carefully safeguarded for the protection of the government.

Finding no error upon the face of the judgment roll, the judgment is affirmed.