# Richmond

JAMES P. HISE V. J. S. GRASTY, TRUSTEE.

November 17, 1932.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Timberlake & Nelson,* for the appellant.

*Joseph I. Nachman,* for the appellee.

CAMPBELL, C. J., delivered the opinion of the court.

At the February Rules, 1930, W. D. Snyder filed his bill in chancery against James P. Hise and John Hise, for the purpose of subjecting certain lands, situated in Augusta county, to the payment of a judgment against John Hise in the principal sum of $875, with interest thereon from the 9th day of February, 1928. After the institution of the suit by Snyder, John Hise was adjudged a bankrupt, and J. S. Grasty, trustee, was by decree permitted to file his

petition in the cause, and became party plaintiff in the place and stead of W. D. Snyder.

It appears from the record that John Hise, a resident of Highland county, was engaged in manufacturing and selling a collapsible bed spring; that in the year 1928 John Hise became insolvent; that on May 19, 1928, and February 28, 1929, James P. Hise (the son of John Hise), made application to the United States Patent Office, for the issuance of patents covering improvements upon the bed spring originated by John Hise. In due time patents were granted to James P. Hise, and said patents were by him sold to a corporation formed for the purpose of manufacturing the bed springs, in which conveyance John Hise joined at the instance of the corporation. The proceeds derived from the sale of the patents were invested in real estate situated in Augusta county, title being taken in the name of James P. Hise.

The bill alleges, in substance, that while James P. Hise was the holder of the legal title to the patents, "the brains and ingenuity of John Hise were responsible for the product covered by the patents," and that the proceeds thereof were invested by direction of John Hise in the real estate in the name of James P. Hise, for the sole purpose of hindering, delaying and defrauding the creditors of John Hise.

The prayer of the bill is, that James P. Hise be declared a trustee of the patents and the proceeds thereof, for the benefit of his father, John Hise, and that the real estate be sold for the purpose of discharging the indebtedness of John Hise.

The answer of respondents denied that John Hise was the owner or inventor of the bed spring, or that he owned any interest in the patents or real estate purchased with the proceeds from the sale of the patents.

The evidence of the complainant was to the effect that John Hise, on several occasions, had declared that he was getting a patent on the bed spring; that the invention was his idea; that he intended to apply for patents in his son's

name to prevent his creditors from realizing upon them; that John Hise conducted all negotiations leading up to the sale of the patents, and the purchase of the real estate; that the checks given in payment for the patents, while payable to James P. Hise, were endorsed by John Hise as his attorney in fact; that the money deposited in bank was subject only to the order of John Hise, attorney in fact; and that John Hise lived upon and farmed the real estate and James Hise had denied any interest in the patents or the proceeds thereof.

On the other hand, the evidence of respondents was to the effect that James P. Hise was the originator of the idea which was carried into the patents; that the entire cost of procuring the patents was borne by him; that the real estate purchased with the proceeds from the sale of the patents was his property; and that he permitted his father to live upon it, as he (the father) was without means of his own.

In a written opinion filed with the record, the trial court held that John Hise was the actual inventor of the bed spring; that James P. Hise had no interest in the patents or the proceeds thereof; that there was a secret understanding between the father and the son, that the son was to hold the legal title for the benefit of the father; that the real estate was impressed with a trust in favor of John Hise and subject to the payment of his debts.

We agree with the conclusion of the trial court that all the equities are with the appellee, and it would be a source of gratification if we could dispose of the case as did the lower court, on the conflict of the evidence. As we view the case, no question of fact is involved; the determinative question is purely a legal one.

In the opinion of the trial court it is said: "If John P. Hise originated the idea * * * and gave it over to his son in an unconditional and absolute right, I do not think that the creditors of John P. Hise could have any right to complain, even though the said James P. Hise afterwards had it

patented and acquired a considerable or great amount of money therefrom."

In that conclusion counsel for appellee concurs.

The court then arrived at the conclusion that John Hise did not give to appellant the idea originated by him, but that he retained ownership of the idea, and by fraud secured the patents in the name of appellant, for the purpose of defrauding his (John Hise's) creditors. Following this view, the court held that the "idea" and the patents were impressed with a trust in favor of John Hise (whether an express or resulting trust is not disclosed by the decree), and that the trust enured to the benefit of the creditors.

It is the settled law in Virginia that an idea, though eventually protected by a patent, is not in the remotest sense property.

In *Stein* v. *Morris,* 120 Va. 390, 394, 91 S. E. 177, 179, this court quotes with approval the doctrine laid down in *Bristol* v. *Equitable Life Assur. Society,* 52 Hun 161, 5 N. Y. S. 131, as follows: "It is difficult to conceive how a claim to a mere idea or scheme, unconnected with particular physical devices for carrying out that idea, can be made the subject matter of property. So long as the originator of the naked idea, whether, germinating under the law of metaphysics, it be regarded as Platonic or Cartesian in its make-up, keeps it to himself, it is his exclusive property, but it ceases to be his own when he permits it to pass from him."

It follows, therefore, that the idea could not be impressed with a trust. The question then arises, Can the patent be impressed with a trust?

In order to impress the patent with an express trust, John Hise must have had an equitable right, title, or interest, in the property; and must have, by express declaration, impressed the property with a trust. It is likewise true that a resulting trust upon property arises out of payment of purchase money, or the equivalent thereof, and not otherwise.

■ The theory of appellee seems to be that John Hise, the alleged inventor, could by contract or agreement with appellant take out the patent in the name of appellant for his benefit, and thus impress it with a trust. Such a theory is untenable, for the reason that under the law of patents no one but the real inventor can obtain a patent, and that a patent issued to an applicant who is not the real inventor is void.

In 22 Am. & Eng. Enc. of Law (2d ed.) p. 346, the rule is thus stated: "Only the first and original inventor is entitled to a patent, subject to the exception, already considered, that certain prior knowledge or use does not constitute an anticipation. A patent to one who is not the inventor of the patented device or who does not claim in the right of the original inventor is void. The consent or connivance of the original inventor does not change the rule, and notwithstanding such consent a patent to one who is not the inventor is void."

■ "The patent law makes it essential to the validity of a patent, that it shall be granted on the application, supported by the oath, of the original and first inventor (or of his executor or administrator), whether the patent is issued to him or to his assignee. A patent which is not supported by the oath of the inventor, but applied for by one who is not the inventor, is unauthorized by law, and void, and, whether taken out in the name of the applicant or of any assignee of his, confers no rights as against the public." *Kennedy* v. *Hazelton*, 128 U. S. 667, 9 S. Ct. 202, 203, 32 L. Ed. 576.

■ For the sake of the argument, we may assume that John Hise originated the idea of the bed spring, the basis for the patents obtained. It is apparent that neither an express trust nor an implied trust can be impressed upon the idea of John Hise, for the reason that an idea is not property, nor can the patent itself be impressed with a trust, for the reason that, so far as John Hise is concerned, the patent is void.

If it was true, as contended, that James P. Hise, without fraud, appropriated the idea of John Hise, then the only recourse of John Hise was by interference in the Patent Office. *Becher* v. *Contoure Laboratories* (C. C. A.), 29 Fed. (2d) 31.

In order for a trust to attach, there must be something tangible to which it can attach. In the case at bar, it is sought to impress a trust upon property which in law has never come into existence.

A case directly in point is that of *Kennedy* v. *Hazelton, supra.* A bill in equity was filed by Kennedy for the specific performance of a contract entered into by the parties, in which contract Hazelton assigned to Kennedy a one-half interest in a patent previously obtained by Hazelton for steam boilers, and further agreed to assign to Kennedy any and all patents which Hazelton might thereafter obtain, for inventions in improvements in steam boilers. Subsequent to the execution of the contract, Hazelton publicly stated that he had invented an improvement of the steam boiler, and afterwards combined and confederated with one Goulding to avoid and evade the effect of the contract with Kennedy; and for that purpose he prepared, at his expense, but in the name of Goulding, the application for the subsequent patent. Before the issuance of the patent, Goulding assigned all of his interest in the improvements and in the patent therefor. A patent was then issued to Hazelton as assignee of Goulding. The bill specifically alleged that Hazelton was, and Goulding was not, the original and first inventor of the improvements so patented.

The bill prayed for the specific performance of the contract, for an adjudication that the title to the patent equitably vested in Kennedy, for an account of profits, and for an injunction against transferring or encumbering the patent.

The defendant demurred to the bill, relying among others, on this ground: "Because, as appeared by the allegations of the bill, the patent was absolutely void, and no suit could

be maintained, either to compel its transfer, or for infringement thereof."

The circuit court sustained the demurrer and dismissed the bill. In affirming the decree of the lower court, Mr. Justice Gray said:

"The case, as stated in the bill and admitted by the demurrer, is shortly this: The defendant agreed in writing to assign to the plaintiff any patents that he might obtain for improvements in steam boilers. He did invent such an improvement, and, with intent to evade his agreement and to defraud the plaintiff, procured a patent for this invention to be obtained upon the application under oath of a third person as the inventor, and to be issued to him as assignee of that person, and has made profits by manufacturing and selling boilers embodying the improvement so patented. The plaintiff seeks by bill in equity to compel the defendant to assign the patent to him, and to account for the profits received under it.

"A court of chancery cannot decree specific performance of an agreement to convey property which has no existence, or to which the defendant has no title. A bill by vendee against vendor for specific performance, which does not show any title in the defendant, is bad on demurrer. And if it appears, by the bill or otherwise, that the want of title (even if caused by the defendant's own act, as by his conveyance to a *bona fide* purchaser), was known to the plaintiff at the time of beginning the suit, the bill will not be retained for assessment of damages, but must be dismissed, and the plaintiff left to his remedy at law. *Columbine* v. *Chichester,* 2 Phil. Ch. 27; *S. C.,* 1 Coop. Temp. Cott. 295; *Ferguson* v. *Wilson,* L. R. 2 Ch. 77; *Kempshall* v. *Stone,* 5 Johns. Ch. [N. Y.] 193; *Morss* v. *Elmendorf,* 11 Paige [N. Y.] 277; *Milkman* v. *Ordway,* 106 Mass. 232, 256.

\* \* \* \* \* \* \* \* \* \*

"The patent issued by the commissioner to the defendant as assignee of Goulding is only *prima facie* evidence that Goulding was the inventor of the improvement patented;

and the presumption of its validity in this respect is rebutted and overthrown by the distinct allegation in the bill, admitted by the demurrer, that the defendant, and not Goulding, was the inventor. This fact is not brought into the case by any answer or plea of the defendant, but it is asserted by the plaintiff himself as a ground for maintaining his bill.

"As the patent, upon the plaintiff's own showing, conferred no title or right upon the defendant, a court of equity will not order him to assign it to the plaintiff—not only because that would be to decree a conveyance of property in which the defendant has, and can confer, no title; but also because its only possible value or use to the plaintiff would be to enable him to impose upon the public by asserting rights under a void patent. *Post* v. *Marsh,* 16 Ch. Div. 395; *Oldham* v. *James,* 14 Irish Ch. 81.

"The bill cannot be maintained for an account of profits received by the defendant from the use of this patent, because a decree for profits can only proceed upon the ground that the plaintiff is at least the equitable owner of the patent, and there can be neither legal nor equitable ownership of a void patent. The same reason is sufficient answer to the suggestion of the plaintiff that the bill may be maintained as a bill to remove a cloud upon his title in this patent.

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

"The result is, that the present bill cannot be maintained, and that the plaintiff must be left to any remedy that he may have to recover damages in an action at law."

The decree of the lower court will be reversed and annulled, and an order will be entered in this court dismissing the bill of complaint.

*Reversed.*