THE NEW ENGLAND TRUST COMPANY, trustee, *vs.* SABIN P. SANGER, SECOND, & others.

Norfolk. December 3, 1957. — April 11, 1958.

Present: RONAN, SPALDING, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Trust,* Validity, Of reversion, Trust res, Construction, Correction of defective expression, Income beneficiary. *Rule against Perpetuities. Notice. Words,* "In case," "At."

A declaration of trust reciting that doubts had arisen concerning the validity under the rule against perpetuities of certain gifts of income and principal made by the settlor in a previous irrevocable and unamendable indenture of trust, and providing that "in case any provision . . . [of the previous indenture] should be declared to be invalid and because of such invalidity any income or principal of the trust should revert in part or in whole to me or to my estate, I . . . declare that I hold in trust and shall be deemed to have held in trust from the date of this instrument, the properties thereby reverting" for disposition according to the scheme of the indenture, was not an attempted amendment of the indenture and was not dependent for its taking effect upon any adjudication of invalidity of gifts made by the indenture but created a valid and presently effective trust of certain interests under the indenture which, because of their actual invalidity, he had held by reversion by operation of law since the time of the execution of the indenture. [347–349]

Notice to a person that he is the beneficiary of a trust created by a formal written declaration is not essential to the validity of the trust. [348]

The remainder interests in principal given by a provision of a trust instrument that "at the death of the last surviving child of . . . [the settlor's brother, who was living at the creation of the trust,] the principal of . . . [the] trust fund, with any accumulations thereto, free of all trust, shall be equally divided amongst the issue of the children of said . . . [brother] per stirpes and not per capita," were void under the rule against perpetuities. [349]

In a trust indenture providing for accumulation of net income during the life of a brother of the settlor, a further provision that "at the death of said . . . [brother] said trustee shall pay said net income to the then surviving children of said . . . [brother] in equal shares to each, the issue of any deceased child taking its parent's share of said income by right of representation," followed by a provision for distribution of the principal free of trust at the death of the last surviving child of the brother which was void under the rule against perpetuities, was construed as providing for a disposition of income "at and

after" the death of the brother and during the lives of his children, as giving his children life interests in the income, but no more, and as giving income, by reason of the death of a child, to that child's issue whether that child's death occurred before or after the brother's death, notwithstanding that such gift of income to the issue would not necessarily vest within the period of the rule against perpetuities and was invalid thereunder. [349–351]

A provision of an indenture of trust should not be construed so as to defeat the settlor's intent merely to avoid a construction that would violate the rule against perpetuities. [351]

In the circumstances, where it appeared that life interests in the income of an inter vivos trust given by the indenture of trust to children of the settlor's brother were valid under the rule against perpetuities, but that interests in the income following deaths of the children were void under that rule and had reverted to the settlor at the time of execution of the indenture, that he subsequently had executed a declaration of trust validly disposing of such reversionary interests in accordance with the scheme which he had originally intended to accomplish by the indenture, and that as events had occurred a disposition of the income under the valid provisions of the indenture and under the later declaration operating concurrently would not accomplish the settlor's scheme, whereas it would be accomplished by a disposition of the income wholly under the declaration, the doctrine of "infectious invalidity" should be applied and the valid interests under the indenture should be treated as inseparable from the invalid interests thereunder and struck down with them, leaving only the declaration operative respecting the income. [351–355]

PETITION, filed in the Probate Court of the county of Norfolk on May 20, 1954.

The case was heard by *Reynolds*, J.

*Theodore Chase*, stated the case.

*Laurence M. Channing*, (*Owen Tudor* with him,) for Channing and another, executors.

*Frank G. Allen, Jr.*, (*Henry W. Keyes* with him,) for The New England Trust Company and others, guardians.

*Francis S. Moulton, Jr.*, for Sabin P. Sanger, Second, and another.

*Vincent V. R. Booth*, guardian ad litem, pro se.

SPALDING, J. These are appeals from a decree of the Probate Court entered on a petition for instructions. The petition was brought by The New England Trust Company, as trustee under an indenture of trust of Sabin P. Sanger, dated February 18, 1913 (hereinafter called the 1913 inden-

ture), and as trustee under a declaration of trust of Sabin P. Sanger, dated April 29, 1930 (hereinafter called the 1930 declaration). The trustee sought instructions as to the distribution of the income and principal of these two trusts.

In the 1913 indenture Sabin P. Sanger, the settlor, declared that he held certain securities in trust.[1] Under article First, the income was to be accumulated during the life of Dr. Eugene B. Sanger (a brother of the settlor and hereinafter called Dr. Sanger) with a power in the trustee to pay to Dr. Sanger such portions of the income as the trustee in its uncontrolled discretion might deem proper. No question is here presented concerning Dr. Sanger's interest. The questions for decision arise out of the second and third articles, which are as follows: "Second: At the death of said Eugene B. Sanger said trustee shall pay said net income to the then surviving children of said Eugene B. Sanger in equal shares to each, the issue of any deceased child taking its parent's share of said income by right of representation. Third: At the death of the last surviving child of said Eugene B. Sanger the principal of said trust fund, with any accumulations thereto, free of all trust, shall be equally divided amongst the issue of the children of said Eugene B. Sanger, per stirpes and not per capita." The trust was irrevocable and there was no power to amend contained in the indenture.

In the course of time it became apparent to the settlor that certain provisions of the 1913 indenture might be repugnant to the rule against perpetuities. To remedy this defect the settlor executed the 1930 declaration. In this instrument the settlor, after reciting that doubts had arisen concerning the validity of certain gifts in the 1913 indenture, because of remoteness, provided as follows: "Now, therefore, in case any provision . . . [of the 1913 indenture] should be declared to be invalid and because of such invalidity any income or principal of the trust should revert

[1] The settlor died on July 8, 1938, and The New England Trust Company was appointed trustee on October 7, 1938, by the Probate Court for Norfolk County.

in part or in whole to me or to my estate, I . . . declare that I hold in trust and shall be deemed to have held in trust from the date of this instrument, the properties thereby reverting, to pay over the net income accruing therefrom to the now living children of said Eugene B. Sanger and to their issue by right of representation until the death of the last survivor of the said children now living and thereupon to pay over the principal of the trust fund free of trust to the then living issue of such children by right of representation." The petition alleges that Dr. Sanger and two of his children were notified of the execution of this declaration prior to the settlor's death, but this allegation is denied by several of the respondents and the judge made no finding touching the matter, being of opinion that notice to the beneficiaries was not essential to its validity.

The family situation relevant to the two trusts is as follows: The settlor died in 1938. Dr. Sanger, the beneficiary under article First, died in 1945 and was survived by his three children. Two of them, Eugene B. Sanger, Junior, and Charlotte S. Averill, were alive when the 1913 indenture was executed; a third child (Sabin P. Sanger, Second) was born in 1919. These are the primary beneficiaries under article Second and will be sometimes referred to hereinafter as the children. The two eldest children, Charlotte and Eugene, Junior, died in 1947 and 1954, respectively. Charlotte was survived by two children, Richard and Constance. Sabin P. Sanger, Second, is still living and has three minor children. These two groups of children, the class intended to be benefited under article Third, will be referred to sometimes hereinafter as the issue. Eugene B. Sanger, Junior, Dr. Sanger's second child, had no children, but he adopted two sons, Eugene B. Sanger, Third, and James M. D. Sanger.

After the death of Dr. Sanger, the income of the trust fund was paid in equal shares to his three children. After Charlotte's death, her share of the income was paid to her issue. The death of Dr. Sanger's second child, Eugene B.,

Junior, led to the present controversy. The two adopted sons of Eugene are not issue within the terms of either the 1913 indenture or the 1930 declaration and can take nothing under either instrument. G. L. (Ter. Ed.) c. 210, § 8.[1] *Gallagher* v. *Sullivan*, 251 Mass. 552.

Eugene, Junior's share of the income has been accumulated since his death, and shortly thereafter the share of income paid to the issue of Charlotte was also accumulated, awaiting the settlement of this controversy.

The controversy centers upon who should receive the share of the income formerly paid to the deceased children, and upon the proper disposition of the principal on the death of the last surviving child, Sabin P. Sanger, Second. Certain members of the Sanger family and legal representatives of others are named as respondents in the petition. A guardian ad litem was appointed to represent the minor children of Sabin, Second, and any unborn or unascertained persons. Basically the respondents take two positions. Sabin, Second, the guardian ad litem, and Constance (Charlotte's daughter) contend that all gifts, following the gift of income to Dr. Sanger, fail and revert to the settlor's estate and pass under the terms of the 1930 declaration. Opposing this contention are the executors of the will of Eugene B. Sanger, Junior, and the guardian of his two adopted sons. The guardian argues that the 1930 declaration is an invalid trust, and that after the termination of the valid gifts in the 1913 indenture, the property reverts to the settlor's estate, and passes under the residuary clause in his will. The executors of Eugene, Junior, construe article Second as giving the principal to the children of Dr. Sanger, and contend that one third of the principal should now be given to the estate of Eugene B. Sanger, Junior. The wills of the settlor, Dr. Sanger, and Eugene, Junior, are such that the two adopted sons of Eugene, Junior, would benefit if either of these contentions should prevail.

The judge entered a decree stating that the settlor's in-

---

[1] See now St. 1958, c. 121.

tent, as expressed in the 1913 indenture, was to create a class gift of income to the children of Dr. Sanger and their issue per stirpes until the death of the last survivor of such children, at which time the principal was to be paid to the issue per stirpes; that the settlor's intent was to benefit Dr. Sanger and his direct descendants only, each line of descent taking an equal share as long as it remained in existence; and that in 1930 the settlor reiterated this desire and provided a means of carrying it out in the event it could not be effectuated under the 1913 indenture. The decree declared that the gifts of principal in the 1913 indenture were invalid and are disposed of under the 1930 declaration. As to the gifts of income under article Second, the decree declared that *all* gifts following that to Dr. Sanger are to be treated as invalid, and passing under the 1930 declaration, for otherwise there would be either an unequal distribution among the different branches of the family, or gifts to those outside the family, both contrary to the settlor's intent. The decree further declared that the interests which did not pass under the 1913 indenture reverted to the settlor in 1913 and that these reversionary interests passed under the 1930 declaration, which, being a formal trust, was valid without notice to the beneficiaries. Accordingly, the trustee was instructed during the life of Sabin, Second, to pay Charlotte's share to her issue, to pay one half of Eugene, Junior's share to the issue of Charlotte, and to pay one half to Sabin, Second; the principal of the trust is to be held until the death of Sabin, Second, at which time it is to be distributed according to the provisions of the 1930 declaration.

We are of opinion that the decree was correct. As we shall point out later, some of the gifts in article Second and the gift of principal in article Third of the 1913 indenture violated the rule against perpetuities. Despite the contention of some respondents to the contrary, we think that the 1930 declaration set up a valid trust, capable of disposing, according to its terms, of all the property in which the settlor held a reversionary interest by reason of the partial

invalidity of the 1913 indenture. The declaration was not an amendment of the indenture, but affected only property so reverting to the settlor.

Any failure, if such there was, of the settlor to notify the beneficiaries of the terms of the 1930 declaration was of no consequence. While, contrary to the prevailing rule, we have held that notice to the beneficiary is essential in certain types of informal trusts (*O'Hara* v. *O'Hara*, 291 Mass. 75, 78; *Aronian* v. *Asadoorian*, 315 Mass. 274, 276–277, and cases cited) the trend of our decisions has been to confine, rather than to extend, this rule. Even our rule has no application to a formal declaration of the sort here involved. *Cohen* v. *Newton Savings Bank*, 320 Mass. 90. *Stern* v. *Stern*, 330 Mass. 312, 317–318. See Scott on Trusts (2d ed.) § 36; Restatement: Trusts, § 36.

The guardian of the adopted children of Eugene argues that the 1930 declaration is obnoxious to the rule against perpetuities because it can have no effect until there has been a declaration of the invalidity of the 1913 indenture, and that may happen at a time beyond the period fixed by the rule. The language of the 1930 declaration on which this contention is grounded reads: "[I]n case any provision thereof should be declared to be invalid and because of such invalidity any income or principal of the trust should revert in part or in whole to me or to my estate."

This argument is untenable. While the expression, "in case," in the quoted clause often carries the flavor of a condition, we do not think it should be so interpreted here. It is plain that the settlor intended to create an effective trust of the reversionary interests. It is equally plain that there can be no trust unless there is an existing trust res (Restatement: Trusts, § 74), and that an interest which has not come into existence cannot be held in trust. *Bennett* v. *Littlefield*, 177 Mass. 294, 300. Restatement: Trusts, § 75. No matter what doubts the settlor may have entertained concerning the validity of portions of the 1913 trust, he actually held from the moment of its creation the reversionary interests which were disposed of by the 1930 declara-

tion.  Any inference of a trust created on a condition to
arise in the future is rebutted by the words "I . . . declare
that I hold in trust and shall be deemed to have held in
trust from the date of this instrument, the properties thereby
reverting."  That event, the reverting of the properties, had
already occurred.  An adjudication was not necessary to
bring it about; it took place by operation of law.  The pur-
pose of the "in case" clause, read as a whole, was to identify
the property that was to go into the trust and to explain
how the settlor acquired it.  It was not a true condition
and may be treated as surplusage.  See *In re Shuckburgh's
Settlement,* [1901] 2 Ch. 794.

We turn now to a determination of what interests were
invalid under articles Second and Third of the 1913 inden-
ture.  There is no doubt that the remainder to the issue
under article Third is void for remoteness.  Indeed, this is
conceded by all parties.  The determination of the issue who
will take cannot be made until the death of Dr. Sanger's
children and such children may include children born after
the creation of the 1913 indenture who may not die within
twenty-one years after the death of the surviving child living
in 1913.  (In fact one child of Dr. Sanger, Sabin, Second, was
born after the creation of the 1913 trust.)  Hence the gift
of the remainder to the issue was utterly void.  *Leake* v.
*Robinson,* 2 Meriv. 363.  *Sears* v. *Putnam,* 102 Mass. 5.
*Hall* v. *Hall,* 123 Mass. 120.  Am. Law of Property, § 24.26.

Article Second presents questions of more difficulty.  The
position of the executors of Eugene B. Sanger, Junior, is as
follows.  A grammatical reading of article Second shows
that the income is to be paid only to those children or their
issue who are alive at the death of Dr. Sanger.  It will be
then, and only then, that the income beneficiaries can be
determined.  Issue of children dying after the death of Dr.
Sanger will not take under article Second.  The phrase "in
equal shares" indicates a tenancy in common in the income
interest, and there is nothing in the 1913 indenture to rebut
this construction.  A construction of article Second which
would give the issue an interest in the income when the

parent dies after Dr. Sanger, would offend against the rule against perpetuities. Under the familiar rule if it is possible to interpret a provision either as valid or as invalid under the rule against perpetuities an interpretation which favors validity is to be adopted. Thus, on the death of an income beneficiary his share of the income, not being limited to life, will pass to his estate. The only limitation on these income interests is the remainder over in article Third, and, because this is void, the indenture must be read without it. Under established principles (so runs the argument), where there is a gift of income of unlimited duration the gift carries with it the principal, and the beneficiary takes the fee.

The chief difficulty with this argument is that its major premise is untenable. We cannot agree that the settlor intended to give the children more than a life interest in the income. True, the executors' reading of article Second is literally correct from a grammatical standpoint, but the difficulty with such a reading is that it cuts too far. If the article is to be read literally, then, as Sabin, Second, and Constance argue, the only point of time referred to for determining when income is to be paid is Dr. Sanger's death. Moreover the only income referred to is "said net income." These words refer back to article First in which the only income mentioned is the income accumulated and added to the principal prior to Dr. Sanger's death. Thus, under such a construction there then would be one payment of income at the death of Dr. Sanger to the children then living and the issue of deceased children; there would be no disposition of income thereafter accruing until the termination of the trust. Apart from this literal reading of article Second there is nothing in the indenture that justifies such a construction. Indeed, the instrument read as a whole compels a contrary construction. The trust here is the familiar family trust with provision for successive generations of the family as beneficiaries. We are of opinion that it was the settlor's intent that the children should have the income as long as they lived. A provision whereby there would be one distribution of income at Dr. Sanger's death and never again

until the death of the surviving child would be most unusual, and to interpret article Second as calling for such a disposition would place too much emphasis on a preposition. Although the settlor said "at," we think that, sensibly construed, he meant "at and after." As we said in the recent case of *Second Bank-State Street Trust Co.* v. *Wasserman, ante,* 195, at pages 200–201, "'Grammatical construction may be altered, sentences and words transposed, and words supplied if necessary to give effect to the manifest intent'" of the settlor.

We are mindful, as Eugene, Junior's executors point out, that under the construction just mentioned article Second collides with the rule against perpetuities. The gift of income to the issue or to the surviving children will not vest ex necessitate within the period of the rule. *Sears* v. *Putnam,* 102 Mass. 5. That this consequence follows such a construction is not disputed. As stated above, Eugene, Junior's executors argue that we should avoid a construction which would violate the rule when a contrary construction, which would not, is possible. We are mindful of the rule of construction on which this contention rests. *Second Bank-State Street Trust Co.* v. *Second Bank-State Street Trust Co.* 335 Mass. 407, 412. But it ought not to be carried to the point of defeating the intent of the settlor. To avoid an interpretation that would violate the rule against perpetuities we shall not place a strained construction upon article Second which would have consequences never intended by the settlor. His intent was to benefit Dr. Sanger's direct descendants. The construction for which Eugene, Junior's executors contend would defeat that intent for reasons already pointed out and for the additional reason that the settlor's property would go to others than Dr. Sanger's descendants.

As the case now stands, all interests after the gift of income to the children for their lives are invalid, and after the death of each child his or her one-third share of the trust will be governed by the 1930 declaration. True, it will go to the persons whom the settlor intended to benefit, but there will be inequalities among the lines of descendants. Between

the death of the first child and the death of the last, income will be paid under both trusts, and the surviving children will be receiving income from both. Thus, until his death, Sabin, Second, will be entitled to one third of the income of the trust under the 1913 indenture. Since the other two children have died their two-thirds shares of the income fall into, and are governed by, the 1930 declaration. Since Eugene, Junior's line has been eliminated (he having died without issue) Sabin, Second, will receive, in addition to his income under the 1913 indenture, one half the income under the 1930 declaration, or two thirds the entire income under both trusts. This, we think, does not accord with the settlor's intent, which was to benefit each line of descendants equally.

This inequality can be eliminated and full effect can be given to the settlor's original plan if all the interests in the 1913 indenture following the gift of income to Dr. Sanger are declared invalid under the principle sometimes called "infectious invalidity."[1] This would eliminate the transition period during which the two trusts would concurrently operate under overlapping plans, and place the fund forthwith into the 1930 trust, where the entire fund would be administered in accordance with the real intent of the settlor. This is what the decree did, and we think it was right.

The doctrine of infectious invalidity has had little application in Massachusetts. In *Bundy* v. *United States Trust Co.* 257 Mass. 72, the donee of a testamentary power of appointment appointed the property to a trust, the primary beneficiaries of which were her two adopted daughters who were born after the creation of the power. Income of the trust was to be paid to these two daughters in the amounts which they required. Any unused income was to be paid

---

[1] See Leach, Perpetuities in a Nutshell, 51 Harv. L. Rev. 638, 656; Am. Law of Property, §§ 24.47–24.52. We understand it to mean that the invalidity of certain gifts in a will or trust occurs in such circumstances that other gifts, valid in themselves, are infected by the invalidity of the bad gifts, and are also held invalid. In effect it is a rule of construction to carry out the presumed intent of the settlor or testator.

to the secondary beneficiaries, the donee's cousins, one of whom was born before the creation of the power. On the death of the two adopted daughters, the principal was to go to their issue, and in default of such issue to the cousins in equal shares. The income interests to the adopted daughters, and the gift of principal to their issue were void for remoteness, and the court said, at page 80, that even if the interests given to the cousins could be separated from the invalid provisions "the effect of holding them valid would be to make the scheme of the testatrix almost hopelessly fragmentary; a construction we are not inclined to adopt." It was held that the property went to the donee's executor.

Our attention has not been directed to any other applications of the principle of infectious invalidity in Massachusetts, nor have we found any. On the contrary, it would appear at first blush that our decisions could not be reconciled with the doctrine. "The general rule is, that, if a limitation over is void for remoteness, it places all prior gifts in the same situation as if the devise over had been wholly omitted." *Lovering* v. *Worthington,* 106 Mass. 86, 88. Similar statements may be found in *Fosdick* v. *Fosdick,* 6 Allen, 41, 43, *Greenough* v. *Osgood,* 235 Mass. 235, 242, *Amerige* v. *Attorney General,* 324 Mass. 648, 656, and *Second Bank-State Street Trust Co.* v. *Second Bank-State Street Trust Co.* 335 Mass. 407. This doctrine was applied in *Proprietors of the Church in Brattle Square* v. *Grant,* 3 Gray, 142, 156, to hold that where there is a valid gift in fee simple, subject to be divested by a void condition subsequent, the gift takes effect absolutely and the condition is disregarded. See Am. Law of Property, § 24.47. Professor Gray, in The Rule Against Perpetuities (4th ed.) page 263, says, "And if anything is now well settled in the law it is that a life estate, good in itself, is not destroyed by the remainder over being bad for remoteness or any other reason." He cites *Lovering* v. *Worthington, supra,* as authority.

Whether the rule is well settled as an inexorable rule of law, as distinct from a rule of construction, is open to doubt.

In none of the cases just mentioned did it appear that the testator's scheme would be more nearly carried out by striking down valid provisions. We do not think that the court intended to lay down a positive rule of law, applicable in any and all situations. The *Lovering* case only sets out the "general rule." The *Brattle Church* case speaks of the "general principle applicable to such cases" (3 Gray, at page 156).

The American Law of Property takes the position in § 24.48 that there may be circumstances where the failure of a gift may so disrupt the dispositive scheme of the settlor or testator that he would prefer that valid prior gifts should also be struck down. The authors caution, however, that making such a determination is a delicate matter, and that valid interests should be struck down only on a clear showing that the alternative disposition, such as intestacy, residuary clause, or otherwise, would better carry out the settlor's scheme. This is in effect the position taken by the American Law Institute. Restatement: Property, § 402.

We are in accord with these principles. Applying them here, we are of opinion that all gifts in article Second should be declared invalid. The settlor's plan for the income gifts under article Second is quite apparent. Each line of his brother's family is to get an equal share of the trust income until its termination. On the death of a child of the brother, that child's issue is to receive the parent's share. The distortion from this plan after the invalid parts are struck out and the valid parts given full effect is readily apparent, and can be measured. On the other hand, if all the property passes under the 1930 declaration, there will be no distortion. All the gifts will take effect exactly as the settlor intended in 1913. We think that in these circumstances it would be inappropriate and unfair to apply the rule against perpetuities mechanically to the specific gifts which violate the rule, and then disregard the consequences of the application. We think that when it is clear that the settlor wanted the good and bad gifts to be made together, and an alternative scheme of disposition is available under which

they can be made together in substantially the same form as the settlor intended, the good and the bad parts should not be regarded as severable, but should fall together. Restatement: Property, § 402, illustration 3, comment g. Am. Law of Property, § 24.52. Simes and Smith, Law of Future Interests (2d ed.) § 1262. *Estate of Whitney,* 176 Cal. 12, 19.

Doubtless, in most situations where there is a partial invalidity of a trust or a will, the relationship between the valid and the invalid gifts will not be readily apparent. There may be little in the instrument to indicate that the valid and the invalid are to be treated as a unit and generally the wiser course will be to give full effect to the valid provisions rather than to decide that another scheme will be closer to the settlor's intent.

The decree of the Probate Court is affirmed. Costs and expenses of the appeals are to be in the discretion of the Probate Court.

*So ordered.*