ROBERT I. KULLY, APPELLEE, V.
WILLIAM A. GOLDMAN, APPELLANT.

305 N.W.2d 800

Filed May 15, 1981. No. 43242.

John F. Thomas of McGrath, North, O'Malley & Kratz, P.C., for appellant.

Bennett G. Hornstein of Taylor, Hornstein & Peters for appellee.

Heard before BOSLAUGH, CLINTON, and BRODKEY, JJ., and REIMER and HIPPE, District Judges.

CLINTON, J.

This action was brought in the District Court for Douglas County by the plaintiff, Robert I. Kully, against the defendant, William A. Goldman, asking the court to temporarily and permanently enjoin Goldman from withholding "the transfer to plaintiff" annually of season tickets to four specific seats to the University of Nebraska varsity football games and from doing anything to prejudice Goldman's "future ability to receive such tickets from the University." The prayer further asked that Goldman be declared trustee of said tickets for Kully's use.

The action is based upon an oral agreement alleged to have been made in 1961 in which Goldman agreed to acquire for Kully four season tickets as well as four for himself. The action is founded upon the alternative theories of (1) a trust, either express, resulting, or constructive; (2) an agreement of agency to annually purchase and transfer the tickets; and (3) a breach of contract to annually purchase and transfer the tickets.

The petition prayed for special relief as to the tickets for the remainder of the 1979 season (the action being tried in the early fall of 1979), and asked for immediate relief so that Kully might use those tickets pending final determination.

The trial court found that as to the tickets for the

remainder of the 1979 season, the parties had entered into an accord and satisfaction and denied the requested relief. As to tickets for future seasons, it found that an implied trust existed and that upon execution by Kully of an undertaking with sufficient sureties in the sum of $500, Goldman be mandatorily enjoined, on being tendered by Kully the actual retail price then charged Goldman by the University of Nebraska to obtain from the university the described tickets "for all future seasons of the University of Nebraska varsity football team home games for the use and benefit of Plaintiff."

We affirm the judgment insofar as it pertains to the 1979 tickets. As to the balance of the judgment, we reverse and direct dismissal of the action. In so doing, even though this matter is tried de novo in this court, we accept the factual findings of the trial court that in about 1961 the parties made an agreement that Goldman would obtain from the University of Nebraska Athletic Department four season tickets for his own use and four for the use of Kully; that ticket reservations were made in Goldman's name; and that from the time the agreement was made in about 1961 until 1979, with the exception of the year 1972, Goldman purchased the four tickets and was paid annually by Kully either before or after the tickets were obtained.

The reason for the partial reversal is that the record establishes that there exists no legally recognized res which may be the subject of a present resulting trust and, secondly, no continuing annually resulting trust could arise where the promise is not supported by consideration. Furthermore, specific performance of an agreement ought not to be granted if it can be made nugatory by the action of a third party.

It is fundamental that in order for a present trust, whether express, resulting, or constructive, to be created, there must be a defined interest or ascertainable object of ownership. Bogert, Trusts and

Trustees §§ 111, 113 (2d ed. 1965), and § 451 (Rev. 2d ed. 1977). An agreement to create a trust in the future in order to be specifically enforceable must be supported by a consideration. *Op. cit.* § 113 at 578-79; Restatement (Second) of Trusts § 26, Comment m (1959). In order for a resulting trust of the purchase money type to arise, the trust claimant must prove payment of the purchase money at the time of or before title is acquired by the trustee. Bogert, Trusts and Trustees § 456 (Rev. 2d ed. 1977).

In this case the evidence shows that Goldman had no contractual right with the university which bound it to annually, for any period of time, sell him tickets upon tender by him of the purchase price. Because Goldman was on the list of annual purchasers, his prospect of obtaining the same seats and the same number of seats each year was good. It was not, however, a property right which he could enforce. The university could, at any time if it chose, refuse to sell tickets to Goldman. Although it is undoubtedly true that the university, barring some change in circumstances, was most likely to continue to sell Goldman tickets, it was not required to do so. In 1971 Kully sought to have the four season tickets transferred to his own name. The university's agent declined to do so, saying: "At the time I talked to you, I did not realize that the seats in question were in the east stadium.

"Several years ago we were faced with the problem of the ever increasing student body, and upon direction of the Board of Regents agreed not [to] reassign any seats in the east stadium, but rather to hold them for the students. In this way it has been possible to continue throughout the last few years *without taking seats away from old season ticket holders.*

"For this reason I cannot comply with your request to transfer the seats in section 104 to you." (Emphasis supplied.) This clearly indicates that the university considered itself as having the option not to honor

future reservations. No attempt was made by Kully to prove otherwise and his own testimony acknowledges the fact that Goldman had no contractual rights to tickets in future seasons.

In a memorandum accompanying its order the court impliedly found that there was no consideration for Goldman's promise to Kully to acquire tickets. The court, in its memorandum, stated: "Consideration is not a legal requirement of implied trusts." Kully introduced no evidence that there was an agreement to pay a consideration for Goldman's services.

It appears to be the universal rule that mere expectancies cannot be held in trust. Restatement (Second) of Trusts § 86 (1959); Bogert, Trusts and Trustees § 113 (2d ed. 1965). The courts have uniformly held that no trust can be created unless there exists some property interest which may be held by the trustee for the claimant. *American Sodium Co. v. Shelley,* 51 Nev. 344, 276 P. 11 (1929) (a revocable permit); *Voelkel et al. v. Tohulka et al.,* 236 Ind. 588, 141 N.E.2d 344 (1957) (a mere expectancy); *Hise v. Grasty,* 159 Va. 535, 166 S.E. 567 (1932) (an idea); *Edgar v. Fitzpatrick,* 377 S.W.2d 314 (Mo. 1964) (an interest not yet in existence). In *New England Trust Co. v. Sanger,* 337 Mass. 342, 348, 149 N.E.2d 598, 602 (1958), the court said: "It is equally plain that there can be no trust unless there is an existing trust res (Restatement: Trusts, § 74), and that an interest which has not come into existence cannot be held in trust. *Bennett v. Littlefield,* 177 Mass. 294, 300. Restatement: Trusts, § 75."

In order for equity to recognize a promise to create a trust in the future when a property or property interest comes into existence, the promise must be supported by a consideration. Restatement (Second) of Trusts § 75, Comment b, § 86, Comments b and c (1959). If no consideration exists the promise is not specifically enforceable. Restatement of Contracts § 366 (1932). The authors of the Nebraska annota-

tions to the Restatement cite in support of the foregoing proposition cases of options to purchase which are not supported by a consideration. See Annot. to § 366 (Supp. II 1933).

The above principles are implicit in our holding in *Valentine Oil Co. v. Powers*, 157 Neb. 71, 59 N.W.2d 150 (1953). That was an action to compel specific performance of an escrow agreement for the delivery of certain oil and gas leases upon compliance with certain conditions. The documents themselves, although still held in escrow, had terminated because there had been a failure to pay delay rentals or to commence the drilling of a well within the required time period. We there said at 86-87, 59 N.W.2d at 160: "'Based on the general equitable doctrine that equity will not render a decree which it is impractical to carry out, and because equity will not do a vain thing, a decree for the specific performance of a contract will not be granted if it would be, or could be made, nugatory . . . .'"

In the case before us, the court's decree directing specific performance was improper because there was no existing res which could be the subject of a present trust and because, insofar as a promise related to acquisition of tickets for "all" future seasons, it was unsupported by a consideration. Without question, of course, where one person furnishes money to another to purchase tickets for him and the latter does so, the purchaser does hold the tickets in resulting trust for the one furnishing the funds and such trust could, in otherwise appropriate circumstances, be specifically enforced. Kully's two other theories of recovery are not supportable because of the absence of consideration and lack of proof of monetary damage. In addition, a contract to act as agent is not usually specifically enforceable in equity. *Bethlehem Engineering Export Co. v. Christie*, 105 F.2d 933 (2d Cir. 1939); *Ice Cream Co. v. Dept. of L.C.*, 154 Ohio St. 357, 96

N.E.2d 203 (1950); *The Case of Mary Clark*, 1 Blackf. 122, 12 Am. Decs. 213 (1821).

AFFIRMED IN PART, AND IN PART REVERSED WITH DIRECTIONS TO DISMISS.

REIMER, District Judge, dissenting.

I respectfully dissent from the majority opinion, and would have affirmed, in part, the decision of the District Court and remanded the matter to the District Court with directions to partition in kind the subject matter of the litigation and set over to the plaintiff whatever right to renew the tickets for the four seats plaintiff has used for the past 17 years as might exist in the defendant.

In this case, the majority makes much of the absence of a monetary consideration, but in the past has not expressed so great a concern. In *Litz v. Wilson, ante* p. 483, 304 N.W.2d 48 (1981), a nominal recitation of a $1 downpayment was sufficient monetary consideration for a $100,000 contract; and in *Kinkenon v. Hue*, 207 Neb. 698, 301 N.W.2d 77 (1981), a "live-in" arrangement which had already been performed by the promisee was sufficient consideration for transfer of a home for life use. The real consideration in each of the referenced cases is the mutuality of the promises exchanged, and the same is true in the instant case with some 17 years of recognition.